JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK'S ENGINE COMPANY NO. 28 RESTAURANT, LLC, a limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, a corporation; ERIC GARCETTI, an individual; and DOES 1 TO 25, inclusive,<br><br>Defendants. | Case No. 2:20-cv-04423-AB-SK<br><br>**ORDER GRANTING DEFENDANT TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

**I.   INTRODUCTION**

Pending before the Court is Defendant Travelers Property Casualty Company of America's ("Travelers" or "Defendant") Motion to Dismiss. (ECF 28.) The motion has been fully briefed and the Court heard oral arguments on this matter on September 4, 2020. (ECF 50.) For the following reasons, the motion is **GRANTED** and this matter is **DISMISSED WITH PREJUDICE**.

1.

**EXHIBIT 1**

## II. BACKGROUND

Plaintiff Mark's Engine Company No. 28 Restaurant, LLC ("Plaintiff") owns and operates a restaurant in downtown Los Angeles. (FAC ¶ 1.) In September 2019, Plaintiff obtained insurance coverage (the "Policy") from Travelers that covers "losses including, but not limited to, business income losses at [Plaintiff's] restaurant." (FAC ¶ 6.) The Policy includes provisions for "Business Income and Extra Expense Coverage" in the case Civil Authority orders closure of the restaurant. (*Id.* ¶ 11.) The Policy states that a covered cause of loss under the policy includes "direct physical loss or direct physical damage unless the loss is specifically excluded or limited in the Policy." (*Id.* ¶ 13.) The Policy specifically excludes "loss or damage caused by or resulting from any virus." (ECF 29-2 at 212.)

In March 2020, like many other businesses, Plaintiff had to significantly adjust its operations due to COVID-19. (*See* FAC at ¶ 22.) Specifically, Plaintiff has "been forced to . . . begin the termination process for dozens of its employees" and to deal with employees who "refused to work out of fear of contracting the novel Coronavirus." (*Id.* at ¶¶ 22-23.) Mayor Eric Garcetti ("Garcetti") issued an order requiring restaurants to close all but take-out and delivery services due to the "dire risks of exposure with the contraction of COVID-19 and evidence of physical damage to property." (*Id.* at ¶ 18.) Garcetti "direct[ed] all non-essential businesses to be closed in Los Angeles," and Plaintiff states that, "[e]xcept for delivery or takeout," the order "caused a complete and total shutdown of Plaintiff's business operations." (*Id.* at ¶¶ 18, 22.)

On April 15, 2020, Plaintiff filed a lawsuit in Los Angeles Superior Court seeking declaratory judgment as to the applicability of the insurance policy to the insured premises. (ECF 1-2.) Plaintiff also asserted causes of action for breach of the implied covenant of good faith and fair dealing and violation of Cal. Insurance Code Section 790.03. (*Id.*) On May 15, 2020, the case was removed to federal court and on

2.

May 22, 2020, Defendant Travelers Indemnity Company of Connecticut filed a Motion to Dismiss. (ECF 1, 13, 14.) On May 29, 2020, Plaintiff filed its First Amended Complaint ("FAC"), replacing Defendant Travelers Indemnity Company of Connecticut with Defendant Travelers Property Casualty Company of America ("Travelers") and mooting the pending Motion to Dismiss. (ECF 21, 25.) Plaintiff also filed a Motion to Remand which was denied on July 27, 2020. (ECF 22, 39.)

The FAC included four causes of action: (1) declaratory relief; (2) breach of contract; (3) breach of implied covenant of good faith and fair dealing; and (4) violation of Business & Professions Code § 17200. (*See generally* FAC.) On June 12, 2020, Travelers filed a Motion to Dismiss. (ECF 28, 29.) Defendant attached a copy of the Policy to its Motion. (ECF 29-2.) Plaintiff opposed the Motion and the Court heard oral arguments on September 4, 2020. (ECF 34, 50.)

Defendant asserts two main arguments: (1) Plaintiff is not entitled to coverage under either the Civil Authority or Business Income and Extra Expense Coverage; (2) even if Plaintiff could show that the Policy provisions apply, the Virus Exclusion provision expressly denies coverage in this instance. (*See* Mot. at 9-10, 14.) Plaintiff argues that (1) where a government-mandated shutdown impedes operations or access to an insured property, Civil Authority coverage applies; (2) it is entitled to coverage because the order caused "physical loss of" its property; and (3) the Virus Exclusion does not apply because the "physical loss" resulted from the government order, not the coronavirus. (Opp'n at 5-6, 7-13.) Both parties have submitted supplemental authorities from other courts, including ones in California and this district. (ECF 41, 42, 46, 47, 48, 49, 51.)

### III. THE INSURANCE POLICY

The parties' arguments center on three provisions of the Policy: Civil Authority Coverage, Business Income and Extra Expense Coverage, and the Virus Exclusion endorsement.

3.

### A. Civil Authority Coverage

The Civil Authority provision covers losses and expenses "caused by action of civil authority that prohibits access to the described premises." (ECF 29-2 at 99.) "The civil authority action must be due to direct physical loss of or damage to property . . . caused by or resulting from a Covered Cause of Loss." (*Id.*)

### B. Business Income and Extra Expense Coverage

The Business Income provision provides that Defendant "will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'. The 'suspension' must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. . . ." (*Id.* at 86-87.)

Plaintiff's Extra Expense coverage provides, in relevant part: "Extra Expense means reasonable and necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss. (*Id.* at 87.)

### C. Virus Exclusion Provision

The Policy also contains an endorsement entitled, "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA." (*Id.* at 212.) This exclusion applies to action of the civil authority, business income, and extra expense provisions. (*Id.*) It reads as follows: "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (*Id.*)

### IV. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

4.

662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Thus, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## V. ANALYSIS

### A. Plaintiff Fails to Plausibly Allege than Any Policy Term Applies.

The Civil Authority, Business Income, and Extra Expense provisions all contain identical language regarding what conditions trigger coverage: "direct physical loss of or damage to property." (ECF 29-2 at 86-86, 99, 212.) Absent either direct physical loss of or damage to the property, Plaintiff cannot show that coverage applies. The Court finds persuasive the reasoning of the Honorable Steven V. Wilson who addressed identical policy language as it relates to COVID-19 with parties whose arguments mirrored those made before this Court:[1]

Although "[a]s a general rule, a district court may not consider any material

---

[1] The Court notes that in adopting the reasoning of Judge Wilson, it has changed the text only to the extent that it reflects the records cites for this matter.

beyond the pleadings in ruling on a Rule 12(b)(6) motion," a court can consider extrinsic material when its "authenticity . . . is not contested and the plaintiff's complaint necessarily relies on them." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation and quotation marks omitted). Plaintiff does not contest the authenticity of the insurance policy attached to Defendant's memorandum. *See generally* Opp'n. Because Plaintiff seeks to recover under the Policy, *see generally* ECF 21, the FAC necessarily relies on the Policy. Therefore, the Court will consider the language contained directly in the Policy in resolving this motion. *See Khoury Investments Inc. v. Nationwide Mutual Ins. Co.*, 2013 WL 12140449, at *2 (C.D. Cal. 2013) (citing *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011)) ("Because Plaintiffs refer to this insurance policy in their FAC and their claim for breach of contract relies on the terms of the policy . . . , this document would likely be appropriate for judicial notice as 'unattached evidence on which the complaint necessarily relies.'").

"When interpreting a policy provision, we must give terms their ordinary and popular usage, unless used by the parties in a technical sense or a special meaning is given to them by usage." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) (citation and quotation marks omitted). The property insurance Policy at issue here requires "direct physical loss of or damage to property" for recovery under the civil authority provision, [the business income provision, and the extra expense provision]. ECF 29-2 at 86-87, 99.

Under California law, losses from inability to use property do not amount to "direct physical loss of or damage to property" within the ordinary and popular meaning of that phrase. Physical loss or damage occurs only when property undergoes a "distinct, demonstrable, physical alteration." *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010) (citation and quotation marks omitted). "Detrimental economic impact" does not suffice. *Id.* (citation and quotation marks omitted); *see also Doyle v. Fireman's Fund Ins. Co.*, 21 Cal. App. 5th 33, 39 (2018) ("[D]iminution in value is not a covered peril, it is a measure of loss" in property insurance).

An insured cannot recover by attempting to artfully plead impairment to economically valuable use of property as physical loss or damage to property. For example, in *MRI Healthcare Ctr.*, the court held that lost use of an MRI machine after it was powered off did not qualify as a "direct physical loss." 187 Cal. App. 4th at 789. Likewise, in *Ward General Ins. Servs., Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548 (2003), the court held that a loss of valuable electronic data did not qualify as "direct physical loss or

6.

damage" without any physical alteration to the storage media. 114 Cal. App. 4th at 555-56. Finally, in *Doyle*, 21 Cal. App. 5th 33 (2018), the court held that purchasing counterfeit wine did not count as a loss to the wine covered by a property insurance policy without a physical alteration to the insured property. 21 Cal. App. 5th at 38-39.

Plaintiff's FAC attempts to make precisely this substitution of impaired use or value for physical loss [of] or damage. Plaintiff only plausibly alleges that in-person dining restrictions interfered with the use or value of its property–not that the restrictions caused direct physical loss or damage.

Plaintiff characterizes in-person dining restrictions as "labeling of the insured property as nonessential." FAC at ¶ 19. That "labeling" surely carries significant social, economic, and legal consequences. But it does not physically alter any of Plaintiff's property.

Plaintiff's FAC appears to suggest that Plaintiff's business hardships resulted from the physical action of the novel coronavirus itself, which "infects and stays on surfaces of objects or materials . . . for up to twenty-eight days." *Id.* at ¶ 16. However, Plaintiff does not allege that the virus "infect[ed]" or "stay[ed] on surfaces of" its insured property. Whatever physical alteration the virus may cause to property in general, nothing in the FAC plausibly supports an inference that the virus physically altered Plaintiff's property, however much the public health response to the virus may have affected business conditions for Plaintiff's restaurant. Even if Plaintiff could somehow recover for physical loss or damage to other property, such loss or damage could hardly qualify as "direct." *See MRI Healthcare Ctr.*, 187 Cal. App. 4th at 779 (internal citation and quotation marks omitted) ("[D]irect means [w]ithout intervening persons, conditions, or agencies; immediate.").

Plaintiff attempts to circumvent the plain language of the Policy by emphasizing its disjunctive phrasing – "direct physical loss *of or* damage to property," ECF 29-2 at 87, 99–and insisting that "loss [of]," unlike "damage," encompasses impaired use. To support this argument, Plaintiff relies on *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, 2018 WL 3829767 (C.D. Cal. 2018). In *Total Intermodal*, the court concluded that giving separate effect to "loss [of]" and "damage" in the phrase, "direct physical loss or damage," required recognizing coverage for "the permanent dispossession of something." *Id.* at *4.

Even if the Policy covers "permanent dispossession" in addition to physical alteration, that does not benefit Plaintiff here. Plaintiff's FAC does not allege that it was permanently dispossessed of any insured property. *See generally* FAC. As far as the FAC reveals, while public health restrictions kept the restaurant's "large groups" and "happy-hour goers" at home instead of in the dining room or at the bar, Plaintiff remained in possession of its dining room, bar, flatware, and all of the accoutrements of its [restaurant.] FAC at ¶ 8.

Next, to the extent Plaintiff relies on this Court's order in *Total Intermodal* for the proposition that "direct physical loss of" encompasses deprivation of property without physical change in the condition of the property (Opp'n at 11-12), the Court notes that such an interpretation of any insurance policy would be without any "manageable bounds." *See Plan Check Downtown III, LLC v. AmGuard Insurance Company, et al.*, No. 2:20-cv-06954-GW-SK at 7 (Sept. 10, 2020) (distinguishing *Total Intermodal*, 2018 WL 3829767, No. 17-cv-04908 (C.D. Cal. July 11, 2018) from COVID-19 business closure).

Lastly, the Court alternatively concludes that Plaintiff suffered no complete "direct physical loss of" its property as it always had complete access to the premises even after the order was issued. The only individuals who could potentially claim "direct physical loss of" access to the premises would be patrons who were no longer allowed to dine in. And even then, the Policy is between Plaintiff and Defendant, not restaurant goers and Defendant.

The Court concludes that Plaintiff has not alleged facts plausibly supporting an inference that it is entitled to coverage under the Policy.

**B.     Even Assuming Plaintiff Could Plausibly Allege "Direct Physical Loss Of or Damage To" Its Premises, the Virus Exemption Precludes Coverage.**

Although the Court finds that Plaintiff fails to plausibly allege that that it suffered a "physical loss of or damage to" its premises by having to shift its business operations, the Court further finds that even if Plaintiff was able to show that it

8.

1  suffered such loss or damage, coverage would be precluded under the virus exemption
2  provision.
3       The virus provision clearly and unequivocally exempts "loss or damage caused
4  by or resulting from any virus." (ECF 29-2 at 212.) Plaintiff's FAC clearly
5  demonstrates that all alleged loss or damage was both caused by and resulted from the
6  novel coronavirus. The FAC alleges that Mayor Garcetti issued the order because of
7  "the dire risks of exposure with the contraction of COVID-19 and evidence of
8  physical damage to property." (FAC ¶ 18.) Plaintiff also states that it shut down its
9  business because employees had "refused to work out of fear of contracting the novel
10 Coronavirus." (*Id.* at ¶ 22.) And most tellingly, Plaintiff seeks declaratory relief "due
11 to physical loss or damage from the Coronavirus." (*Id.* at ¶ 28.) The virus exemption
12 applies here and precludes all coverage.

     **C.    All Causes of Action Fail Because They Are Premised Upon an Inapplicable Policy.**

15      Plaintiff's first cause of action fails because Plaintiff has failed to provide a
16 cognizable legal theory or set of facts about the Policy that would allow the Court to
17 provide declaratory relief, this cause of action fails. *See Native Vill. of Noatak v.*
18 *Blatchford*, 38 F.3d 1505, 1514 (9th Cir. 1994) ("The district court, . . . may grant
19 declaratory relief only when there is an actual case or controversy; a declaratory
20 judgment may not be used to secure judicial determination of moot questions."),
21 *overruled on other grounds by Bd. of Trs. of Glazing Health & Welfare Tr. v.*
22 *Chambers*, 941 F.3d 1195 (9th Cir. 2019); *see also Amaral v. Wachovia Mortg. Corp.*,
23 692 F. Supp. 2d 1226, 1236 & n.3 (E.D. Cal. 2010) (dismissing two of three requested
24 declarations in part because "a determination as to whether Plaintiffs [were] entitled to
25 the third requested declaration [would] involve an analysis of the issues surrounding
26 the first two with no need for separate declarations on all three matters").
27      Next Plaintiff's second cause of action fails because Travelers did not withhold
28 benefits due because no conditions triggered coverage, and even if they had, coverage

9.

would have been excluded under the virus provision. "[T]he failure of [a policy's] conditions precedent is a complete defense to [an insured's] breach of contract claim." *1231 Euclid Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 135 Cal. App. 4th 1008, 1020–21 (Ct. App. 2006); *see also Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 n.10 (Ct. App. 1990) (quoting Kornblum et al., Cal. Practice Guide: Bad Faith § 4:28, pp. 4–9) (emphasis omitted) ("[A]bsent an actual withholding of benefits due, there is no breach of contract.").

Plaintiff's third cause of action similarly fails because "[w]here benefits are withheld for proper cause, there is not breach of the implied covenant." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990).

And finally, Plaintiff's fourth cause of action fails because it is premised upon the above claims which also fail. *See Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (Ct. App. 2012); *Krantz v. BT Visual Images, LLC*, 89 Cal. App. 4th 164, 178 (Ct. App. 2001) (finding viability of a UCL claim "stand[s] or fall[s] depending on the fate of the antecedent substantive causes of action"); *see also Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (finding Section 17200 claim failed where underlying negligence and fraud claims failed). Further, the Court has concluded that Plaintiff was not entitled to recover under the Policy on the facts alleged in the FAC based on the "ordinary and popular sense" of the Policy language. *Palmer*, 21 Cal. 4th at 1115. And because "the ordinary and popular sense" of the Policy language does not support recovery on these facts, Plaintiff cannot plausibly allege that the Policy constitutes fraudulent, unfair, or unlawful conduct giving rise to UCL liability. *See Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (citing *Cel-Tech Comms., Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 182 (1999)) ("[T]he breadth of [the UCL] does not give a plaintiff license to 'plead around' the absolute bars to relief contained in other possible causes of action by recasting those causes of action as one for unfair competition.").

## VI. CONCLUSION

For the reasons above, the Court **GRANTS** Defendant's Motion to Dismiss the FAC. The Court finds that even if Plaintiff plausibly alleged coverage under the Policy, the Virus Exemption provision would preclude all coverage such that Travelers would have no duty to perform under—or breach—the Policy. Accordingly, amendment would be futile and this matter is **DISMISSED WITH PREJUDICE**.

Dated: October 02, 2020

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE