UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AFM MATTRESS CO., LLC, <br><br> Plaintiff, <br><br> v. <br><br> MOTORISTS COMMERCIAL MUTUAL INS. CO., <br><br> Defendant. | No. 20 CV 3556 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiff AFM Mattress Company owns 52 mattress stores in Indiana and Illinois. In March 2020, it shut down its businesses due to the COVID-19 pandemic and the related state and local governments' stay-at-home orders. Plaintiff submitted a claim for business-interruption coverage to its insurer, defendant Motorists Commercial Mutual Insurance Company, but defendant denied the claim. Plaintiff seeks a declaratory judgment that it is entitled to coverage. Defendant moves to dismiss for failure to state a claim, citing the policy's virus exclusion. For the reasons discussed below, the motion is granted.

I.  **Legal Standards**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, I

construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018).

At this stage of the case, I may only consider allegations in the complaint, documents attached to the complaint, documents that are both referred to in the complaint and central to its claims, and information that is subject to proper judicial notice. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). Plaintiff attaches the insurance policy to its complaint, [1-1] Exh. 1,[1] so I consider that policy in ruling on the motion to dismiss. *See Hongbo Han v. United Cont'l Holdings, Inc.*, 762 F.3d 598, 601 n.1 (7th Cir. 2014).

## II. Facts

Plaintiff owned 52 mattress stores in Indiana and Illinois. [1-1] ¶ 14. Defendant was plaintiff's insurer. [1-1] ¶¶ 15–16. The insurance policy covered loss of business income and loss due to actions of a civil authority. [1-1] ¶ 17. Under the civil authority provision, defendant would pay for businesses losses sustained "[w]hen a Covered Cause of Loss cause[d] damage to property other than the property at the described premises" and the "action of civil authority" prohibited access to the described premises. [1-1] ¶ 23. For coverage to apply, the civil authority must have prohibited access to the area surrounding the damaged property "as a result of the damage," and the described premises must have been within a mile of the damaged

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

property. [1-1] ¶ 23. Also, the civil authority must have acted "in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage," or "the action [wa]s taken to enable a civil authority to have unimpeded access to the damaged property." [1-1] ¶ 23. The policy defined "Covered Cause of Loss" as "direct physical loss unless the loss is excluded or limited in this policy." [1-1] ¶ 25. The policy did not define "civil authority." [1-1] ¶ 24. Plaintiff alleges that the states of Illinois and Indiana, the governors of those states, the Illinois state department of health, and the City of Chicago are all civil authorities. [1-1] ¶¶ 41–47, 54–55.

The policy also contained a "virus exclusion" clause. [1-1] at 180. The exclusion stated: "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." [1-1] at 180. The exclusion applied to "all coverage under all forms and endorsements that comprise this Coverage Part or Policy," including, but not limited to, business income, extra expense, or action of a civil authority. [1-1] at 180.

On March 11, 2020, the World Health Organization characterized COVID-19 as a pandemic. [1-1] ¶ 48. A few days later, Illinois Governor J.B. Pritzker issued an executive order banning public and private gatherings of 50 or more people. [1-1] ¶¶ 40–41, 49–50. The intent of the executive order was to slow the spread of COVID-19, because frequently used surfaces in public settings posed a risk of exposure if not cleaned and disinfected property. [1-1] ¶ 50. It was also to promote social distancing,

the "paramount strategy for minimizing the spread of COVID-19." [1-1] ¶ 51. A few days later, in response to COVID-19, the governor issued an order requiring Illinois residents to stay home, except for essential activities, and reduced gatherings to ten people or less. [1-1] ¶¶ 4, 51. The Illinois Department of Health and the City of Chicago also issued orders banning gatherings of more than ten people. [1-1] ¶¶ 42–43. On March 6, 2020, Indiana Governor Eric Holcomb declared a public health emergency due to the pandemic. [1-1] ¶ 52. Ten days later, he issued an order prohibiting events of more than fifty people, and, on March 23, 2020, issued a stay-at-home order directing all nonessential businesses to close and reducing gatherings to ten people. [1-1] ¶¶ 52–53.

In March 2020, because of the executive orders issued in response to COVID-19, plaintiff closed its stores. [1-1] ¶ 56. Plaintiff sustained losses as a result. [1-1] ¶¶ 27–29, 57. The company submitted a claim to defendant for its business losses, and defendant denied the claim. [1-1] ¶¶ 58–59.

## III. Analysis

Plaintiff seeks a declaratory judgment under 735 ILCS § 5/2-701 requiring defendant to cover its losses.[2] Defendant moves to dismiss for failure to state a claim

---

[2] Plaintiff brought its claim for a declaratory judgment under Illinois law. A federal court sitting in diversity applies state substantive law and federal procedural law. *Reynolds v. Henderson & Lyman*, 903 F.3d 693, 695 (7th Cir. 2018). Both the federal and Illinois declaratory judgment statutes are procedural, not substantive. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 199 (2014) (federal statute); *Beahringer v. Page*, 204 Ill.2d 363, 373 (2003) (state statute). So the federal Declaratory Judgment Act governs plaintiff's claim. *People ex rel. Barra v. Archer Daniels Midland Co.*, 704 F.2d 935, 940 (7th Cir. 1983).

based on the virus exclusion in the insurance policy.[3] Defendant does not concede that plaintiff has adequately pleaded that physical damage or loss occurred, [11] at 6 n.3; [16] at 4 n.1, but argues that it need not address any argument other than whether the virus exclusion applies. As plaintiff sees it, defendant must cover its losses because it was the shutdown orders, not the virus itself, that caused them. Plaintiff also argues that the virus exclusion applied only to viruses that existed at the time the parties entered into the insurance policy.

The interpretation of an insurance policy is a matter of state law. *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 777 (7th Cir. 2015). A court sitting in diversity applies the law of the forum state. *See Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015). Both parties here agree that Illinois law applies. Under Illinois law, the general rules governing interpretation of contracts also govern the interpretation of insurance policies. *Scottsdale Ins. Co. v. Columbia Ins. Grp.*, 972 F.3d 915, 919 (7th Cir. 2020). The goal is to "ascertain and give effect to the intention of the parties, as expressed in the policy language." *Id.* (quoting *Hobbs v. Hartford Ins. Co. of the Midwest*, 214 Ill.2d 11 (2005)); *Ill. Farmers Ins. Co. v. Hall*, 363 Ill.App.3d 989, 993 (1st Dist. 2006). All provisions of the policy should be read together; every part of the contract must be given meaning, so no part is meaningless

---

[3] The court has subject-matter jurisdiction over these state-law claims. Plaintiff is an LLC. Its members are all citizens of Illinois or Delaware. *See* [25]. Defendant is an insurance company organized under the laws of Ohio with its principal place of business of business in Ohio. The amount in controversy exceeds $75,000. [1] ¶¶ 4(f)–(g); *see* 28 U.S.C. § 1332.

or surplusage. *Mkt. St. Bancshares, Inc. v. Fed. Ins. Co.*, 962 F.3d 947, 954–55 (7th Cir. 2020), *reh'g denied* (July 10, 2020).

If the words of a policy are reasonably susceptible to more than one meaning, the words are considered ambiguous. *Cent. Ill. Light Co. v. Home Ins. Co.*, 213 Ill.2d 141, 153 (2004). If language in the policy is ambiguous, it is construed against the insurer. *Id; see also Altom Transp., Inc. v. Westchester Fire Ins. Co.*, 823 F.3d 416, 421 (7th Cir. 2016). But a contract is not ambiguous "merely because the parties disagree on its meaning." *Cent. Ill. Light Co.*, 213 Ill.2d at 158. Courts will not strain to find ambiguity where none exists. *Hall*, 363 Ill.App.3d at 994.

The text of the policy precludes civil authority coverage here. Civil authority coverage applied when "a Covered Cause of Loss cause[d] damage" that led a civil authority to prohibit access to plaintiff's property, under certain circumstances. [1-1] at 170. The policy defined Covered Cause of Loss as "direct physical loss unless the loss is excluded or limited in this policy." [1-1] at 186. The policy excluded loss or damage "resulting from any virus," [1-1] at 180, and that exclusion applied to "all coverage under all forms and endorsements that comprise this Coverage Part or Policy," including action of a civil authority. [1-1] at 180. Contracts in Illinois must be interpreted to honor the parties' intentions as reflected in the text, and the text of this policy is straightforward. Defendant agreed to cover plaintiff when a covered cause of loss caused damage to a nearby property, triggering the government to prohibit access to plaintiff's stores. But damage from a virus was not a covered cause of loss—the policy explicitly excluded coverage for virus-related loss. And the virus

6

exclusion itself made clear that the exclusion applied to civil authority coverage. The policy contemplated that a government entity might take some action in response to a virus, and specifically excluded coverage in that scenario.[4]

Plaintiff's argument that its losses occurred because the Indiana and Illinois governmental entities issued shutdown orders, not because of the virus itself, is unpersuasive. Plaintiff's complaint undermines its argument—the complaint alleges that plaintiff's losses were due to both the virus and the shutdown orders that followed. *See, e.g.*, [1-1] ¶ 4 (plaintiff suspended business "due to the COVID-19 pandemic, and the ensuing orders of governmental authorities"); [1-1] ¶ 8 ("Defendant has refused to pay Plaintiff's claim for losses sustained due to the COVID-19 pandemic and the ensuing orders of governmental authorities.").

Moreover, civil authority coverage does not exist in a vacuum—there is always some underlying cause of loss that triggers the government action, and the policy must cover that underlying cause for civil authority coverage to apply. Generally, civil authority coverage "is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property." *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686–87 (5th Cir.

---

[4] Other courts that have considered similar or identical virus exclusions have found the text of the policy precluded coverage and granted the insurers' motions to dismiss. *See, e.g.*, *10e, LLC v. Travelers Indem. Co.*, 2020 WL 6749361, at *3 (C.D. Cal. Nov. 13, 2020) (collecting cases); *Turek Enterprises, Inc. v. State Farm Mut. Auto. Ins. Co.*, 2020 WL 5258484, at *8 (E.D. Mich. Sept. 3, 2020); *Martinez v. Allied Ins. Co.*, 2020 WL 5240218, at *2 (M.D. Fla. Sept. 2, 2020); *Diesel Barbershop, LLC v. State Farm Lloyds,* 2020 WL 4724305, at *7 (W.D. Tex. Aug. 13, 2020).

2011) (citation omitted). Governments typically don't issue shutdown orders for no reason, so the underlying cause of damage matters. For example, courts have found civil authority coverage applied when governments prohibited access in response to damage caused by the September 11 terrorist attacks, hurricanes, and civil unrest. *See S. Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140–41 (10th Cir. 2004) (collecting cases); *Abner, Herrman & Brock, Inc. v. Great Northern Ins. Co.*, 308 F.Supp.2d 331, 333 (S.D.N.Y. 2004). In this case, the governments issued shutdown orders in response to the virus, an excluded cause of loss. Without a covered cause of loss, there is no civil authority coverage, and plaintiffs do not plead that some other event triggered the shutdown orders. That other governments reacted differently or imposed looser restrictions doesn't change the fact that the governments at issue here restricted public access to plaintiff's stores in response to the virus.

That COVID-19 didn't exist when the parties entered into the insurance contract is irrelevant. The policy excludes coverage for damages caused by "any" virus. To be sure, the word "any" could mean "some" or "all." *See United States v. Miscellaneous Firearms*, 376 F.3d 709, 712 (7th Cir. 2004) (defining the word "any"); *see also People v. Sedelsky*, 2013 IL App (2d) 111042, ¶¶ 20–21 ("any" could mean "some," "one out of many," or an "indefinite number"). And where "any" could reasonably mean either "all" or "some," contracts and statutes have been deemed ambiguous. *See First Bank & Tr. v. Firstar Info. Servs., Corp.*, 276 F.3d 317, 323–24 (7th Cir. 2001) (contract was ambiguous where "any Service" could plausibly mean either all services or some services).

8

But the meaning of a contract "cannot be derived from words and phrases considered in isolation." *Id.* at 324. The text of the exclusion here does not support the meaning that plaintiff gives it. The exclusion reads: "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." In context, the word "any" here means all viruses that induce or are capable of inducing illness or disease. There's no temporal limitation in the policy on when a given virus must have come into existence to be included in the virus exclusion, and nothing in the text suggests that the parties intended the exclusion to apply only to viruses that existed at the time they entered into the policy. While plaintiff rightly points out that, under Illinois law, ambiguous language should be interpreted to favor the insured, that presumption is triggered only when the language is ambiguous. *Phillips v. Prudential Ins. Co.*, 714 F.3d 1017, 1020 (7th Cir. 2013); *Hobbs v. Hartford Ins. Co.*, 214 Ill.2d 11, 17 (2005). There is no ambiguity in the language here.

**IV.     Motion for Sur-Response and Leave to Amend**

Plaintiff's motion to file a sur-response is denied. Plaintiff seeks to reframe its case in a sur-response brief by adding an allegation that defendant made misrepresentations to state insurance regulators to obtain approval of the virus exclusion. But that allegation doesn't appear in the complaint, and a plaintiff may not amend its complaint in a response brief. *Rose v. Bd. of Election Comm'rs*, 815 F.3d 372, 376 n.3 (7th Cir. 2016).

Leave to amend should be freely given after dismissal of an initial complaint, unless amendment would be futile. *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018). Given that plaintiff may have an alternative theory for why defendant should cover its losses, amendment is not obviously futile. Plaintiff's complaint is dismissed without prejudice.

## V. Conclusion

Plaintiff's motion to file a sur-response [26] is denied. Defendant's motion to dismiss [10] is granted. The complaint is dismissed without prejudice. If plaintiff does not file an amended complaint by December 16, 2020, the dismissal will convert to one with prejudice.

ENTER:

                                                 Manish S. Shah
                                                 United States District Judge

Date: November 25, 2020