**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| AFM MATTRESS COMPANY, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.: 1:20-cv-03556 |
| v. | ) |
| | ) Judge: Manish S. Shah |
| MOTORISTS COMMERCIAL MUTUAL | ) |
| INSURANCE COMPANY, | ) Magistrate Judge: M. David Weisman |
| | ) |
| Defendant. | ) |

**<u>FIRST AMENDED COMPLAINT FOR DECLARATORY AND OTHER RELIEF</u>**

NOW COMES Plaintiff AFM Mattress Company LLC ("Plaintiff"), by and through its attorneys, Brown Udell Pomerantz & Delrahim Ltd., and for its First Amended Complaint for Declaratory and Other Relief against Motorists Commercial Mutual Insurance Company, an Ohio mutual company ("Defendant"), states as follows:

**NATURE OF THE CASE**

1.  Plaintiff brings this action against Defendant for failing to abide by the terms of the insurance policy issued to Plaintiff as Policy No. 5000045035, as well as any other applicable insurance policies issued or administered by Motorists Commercial Mutual Insurance Company (collectively, the "Policy").

2.  Plaintiff paid its premiums on the Policy for the past year, with the expectation that Defendant would honor its promises under the Policy and pay covered claims when needed by Plaintiff.

3.  Under The Policy, Plaintiff agreed to make payments to Defendant in exchange for Defendant's promise to indemnify the Plaintiff for losses including, but not limited to, business income losses at its fifty-two (52) insured properties, including: 5725 S. La Grange Rd., Countryside, IL; 1953 N Clybourn Ave, Chicago. IL; 1461 Ellinwood Ave, Des Plaines, IL;

1630 75th St, Downers Grove, IL; 665 W North Ave, Elmhurst, IL; 618 Davis St, Evanston, IL; 6409 Grand Ave, Gurnee, IL; 134 Us Highway 41, Schererville, IN; 531 S Rand Rd, Lake Zurich, IL; 1474 S Butterfield Rd, Mundelein IL; 7203 W Dempster St. Niles, IL; 1458 Golf Rd, Rolling Meadows, IL; 2400 E Main St Ste 109, Saint Charles, IL; 35 E Golf Rd, Hoffman Estates, IL; 2658 E Main St, Plainfield, IN; 4909e 82nd St, Indianapolis, IN; 9369 E Washington St, Indianapolis, IN; 7570 Barrington Rd, Hanover Park, IL; 7123 North Ave, Oak Park, IL; 2950 US Highway 34, Oswego, IL; 2710 Laporte Ave, Valparaiso, IN; 4726 S Scatterfield Rd, Anderson, IN; 2839 W 95th St, Evergreen Park, IL; 578 W Northfield Dr, Brownsburg; IN; 197 McHenry Rd, Buffalo Grove, IL; 51 Skokie Blvd, Northbrook, IL; 1410 W 86th St, Indianapolis, IN; 4916 Illinois Rd Ste 100, Fort Wayne, IN; 5172 Franklin St, Michigan City, IN; 1406 S Rangeline Rd, Carmel, IN; 2211 Sycamore Rd, Dekalb, IL; 6000 N Lincoln Ave, Chicago, IL; 10464 Maysville Rd, Fort Wayne, IN; 1408 E 53rd St, Chicago, IL; 2112 N Clybourn Ave, Chicago, IL; 336 W Army Trail Rd, Bloomingdale, IL; 447 N Milwaukee Ave, Vernon Hills, IL; 102 S Schmale Rd, Carol Stream, IL; 4602 North Harlem Avenue, Harwood Heights, IL; 201 S State Road 135. Greenwood, IN; 254 W 81st Ave, Merrillville, IN; 4004 Roosevelt Rd, Hillside, IL; 2123 S Randall Rd. Geneva, IL; 9392 W 159th St, Orland Park, IL; 1226 N Clybourn Ave, Chicago, IL; 1300 Pratt Blvd, Suite 100, Elk Grove Village, IL; 13117 South Lagrange Road, Orland Park, IL; 1044 S Route 59, Naperville, IL; 349 E Rand Rd, Arlington Heights, IL; and 10000 Skokie Blvd, Skokie, IL; 2620 N Narragansett Ave Chicago, IL; 700 W Diversey Ave Chicago, IL; 3 Rice Lake Square Wheaton, IL (collectively "Insured Properties").

4. During the policy period, in March of 2020, Plaintiff halted and suspended business activities at its fifty-two (52) retail mattress stores in Illinois and Indiana due to loss of and damage to its properties from the COVID-19 pandemic, and from orders of governmental

authorities issued as a result of damage to other properties. Specifically, Illinois Governor J.B. Pritzker issued an executive order on March 15, 2020 banning all public and private gatherings of 50 or more people, in an effort to limit infection and death resulting from the spread of the virus. On March 20, 2020, Governor Pritzker issued a Closure Order (Executive Order 2020-10) (a.k.a., a Stay At Home Order) requiring all Illinois residents to stay at home barring exceptions for essential activities. On March 23, 2020, Indiana Governor Eric Holcomb issued an order prohibiting all activities outside the home, likewise exempting only essential travel, business, governmental and healthcare activities.

5.      Before this, on March 11, 2020, the World Health Organization officially characterized COVID-19 as a pandemic, raising the health emergency to its highest level. Since that time, the number of cases of the virus has increased exponentially globally, with more than 200 countries and territories affected.

6.      The losses that Plaintiff has incurred and will incur are due to circumstances beyond its control which are no fault of its own.

7.      To protect its business, its investors and its employees, Plaintiff submitted a claim to Defendant under the Policy, which Plaintiff had acquired for just this type of event/crisis.

8.      Despite having been given proper and timely notice, however, Defendant has refused to pay Plaintiff's claim for losses to its business sustained due to the damage to its properties and the orders of governmental authorities' orders.

9.      Due to Defendant's failure to pay Plaintiff's claim, Plaintiff has no option but to seek a declaratory judgment pursuant to the Illinois Declaratory Judgment Act, 735 ILCS 5/2-701, establishing that it is entitled to receive the benefit of the insurance coverage it purchased and for indemnification of the business losses it has sustained.

476701_2

**THE PARTIES**

10.     Plaintiff is a limited liability company formed under Delaware law with its principal place of business in Elk Grove Village, Illinois.

11.     Defendant is an insurance company formed under the law of Ohio with its principal place of business in Columbus, Ohio.

**JURISDICTION AND VENUE**

12.     This Court has jurisdiction over this matter under 735 ILCS 5/2-209(a) because the Defendant does business in Illinois.

13.     Venue is proper pursuant to 735 ILCS 5/2-101 because the transaction out of which the cause of action arose occurred in Cook County, Illinois.

**FACTUAL BACKGROUND**

14.     Plaintiff is the owner/operator of fifty-two (52) retail mattress stores located in Illinois and Indiana.

*The Policy*

15.     At all relevant times, Defendant insured Plaintiff pursuant to the Policy drafted by Defendant.

16.     Plaintiff is a named insured pursuant to the Policy. A copy of the Policy is attached hereto as Exhibit 1.

17.     Plaintiff's Policy includes a Business Income (and Extra Expense) Coverage Form providing coverage for loss of Business Income, Extra Expense coverage, and coverage for loss due to the actions of a Civil Authority.

18.     Relevant portions of the Policy provide that:

476701_2

1. Business Income

     \* \* \*

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.  With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

   (a) The portion of the building which you rent, lease or occupy;
   (b) The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and
   (c) Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

19.    The term "Business Income" is defined in the Policy as the:

   a.  Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and
   b.  Continuing normal operating expenses incurred, including payroll.

20.    The Extra Expense coverage states, in relevant part:

We will pay necessary Extra Expense (other than the expense to repair or replace property) to:

(1) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

(2) Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

21.     Extra Expense is defined to mean "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss."

22.     The term "period of restoration," as modified by an endorsement, is defined in the Policy as the period of time that:

    a.   Begins:
       (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or
       (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;
        caused by or resulting from any Covered Cause of Loss at the described premises; and

    b.   Ends on the earlier of:
       (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality;
       (2) The date when business is resumed at a new permanent location; or
       (3) Twelve consecutive months after the time of direct physical loss or damage.

23.     Civil Authority coverage is described in the Policy as follows:

    a.   Civil Authority

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

-6-

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

(1) Four consecutive weeks after the date of that action; or

(2) When your Civil Authority Coverage for Business Income ends;

whichever is later.

24.     The term "civil authority" is not defined in the Policy.

25.     By virtue of an endorsement, the 72-hour waiting period for the above coverages is reduced to 24-hours.

26.     "Covered Cause of Loss" in the Policy "means direct physical loss unless the loss is excluded or limited in this policy."

27.     While the Policy was in force, Plaintiff sustained, and continues to sustain, losses due to damage at, in, on, and/or around Plaintiff's Insured Properties and retail mattress stores because of the presence of the virus that causes COVID-19.

28.     While the Policy was in force, Plaintiff sustained, and continues to sustain, loss due to the civil authority orders issued by the Governor of Illinois, the Illinois Department of Health, the Governor of Indiana, and the Indiana Department of Health.

-7-

*The Invalid "Virus Exclusion"*

29.     Pursuant to Illinois law, insurance companies issuing policies in Illinois are required to submit policy forms, endorsements, and exclusions (or proposed changes to any of the foregoing) to the Illinois Department of Insurance ("DOI") for approval.  Absent such approval, an insurer is not permitted to utilize the proposed form, endorsement, or exclusion in any policy issued in Illinois.

30.     The Policy is based upon forms and endorsements prepared by Insurance Services Office, Inc. ("ISO"), an insurance industry services company that, among other things, prepares standardized insurance forms and endorsements for insurance companies and, on behalf of its members and subscribers, submits such forms to state regulators for approval.

31.     After the outbreak of Severe Acute Respiratory Syndrome ("SARS") in 2003, the insurance industry was hit with an avalanche of business interruption claims flowing from SARS.  Insurers paid out millions of dollars in connection with such claims, including a reported $16 million paid to a single claimant.

32.     As a result of the liability incurred by insurers for business interruption claims resulting from SARS, in or about 2006 ISO created a new policy endorsement, form number CP 01 40 07 06, entitled "Exclusion of Loss Due to Virus or Bacteria" (the "Virus Endorsement").

33.     The Virus Endorsement is a standard ISO form utilized by Defendant and included in the Policy.

34.     In or about 2006 or 2007, ISO, on behalf of various insurers including Defendant, submitted the proposed Virus Endorsement to DOI for approval.

35.     In connection with such submission to DOI, Defendant, acting through ISO, relied upon a circular prepared by ISO describing the background and reasoning for the submission of

the proposed Virus Endorsement.  A true and correct copy of the ISO circular is attached hereto

as Exhibit 2.

36.     The ISO circular states:

> Disease-causing agents may render a product impure (change its
> quality or substance), or enable the spread of disease by their
> presence on interior building surfaces or the surfaces of personal
> property. When disease-causing viral or bacterial contamination
> occurs, potential claims involve the cost of replacement of property
> (for example, the milk), cost of decontamination (for example,
> interior building surfaces), and business interruption (time
> element) losses.

*See* Ex. 2 at 5.

37.     The ISO circular further claims:

> ***While property policies have not been a source of recovery for
> losses involving contamination by disease-causing agents***, the
> specter of pandemic or hitherto unorthodox transmission of
> infectious material raises the concern that insurers employing such
> policies may face claims in which there are efforts to expand
> coverage and to create sources of recovery for such losses,
> contrary to policy intent.

*Id*. at 6 (emphasis added).

38.     In order to justify approval of the proposed Virus Endorsement by DOI without a

corresponding reduction in insurance premiums to reflect reduced coverage under policies

including the Virus Endorsement, Defendant, acting through ISO, falsely advised DOI that

property policies had not previously been a source of recovery for losses resulting from disease-

causing agents such as viruses, the intent of such policies was never to cover such losses, and

thus the Virus Endorsement was a mere clarification of existing coverage, as opposed to a

reduction in coverage which would have required a reduction in insurance premiums.

39.     Contrary to Defendant's misrepresentations to DOI, however, policies have, in

fact, been a source of recovery for losses from disease-causing agents.  For instance, as noted

above, the insurance industry paid out millions of dollars for business interruption claims stemming from SARS. Likewise, policies had previously been a source of recovery for losses due to the presence of *e coli* and other health-threatening organisms.

40. Because Defendant falsely represented to DOI that the Virus Endorsement was merely a clarification of existing coverage and would not result in an alteration in coverage under property policies, Defendant is bound by such representations to the insurance regulator and, pursuant to regulatory estoppel, its property policies containing the Virus Endorsement are to be interpreted as providing the same coverage that existed even in the absence of the Virus Endorsement.

41. At minimum, the regulatory history of the Virus Endorsement demonstrates an ambiguity in the Policy with respect to the Virus Endorsement that must be resolved in favor of the insured, and any contention by Defendant that the Virus Endorsement precludes coverage should be rejected as being inconsistent with the representations made to DOI.

*The COVID-19 Pandemic*

42. COVID-19 is a disease caused by the SARS-CoV-2 virus which is a physical substance and human pathogen.

43. SARS-CoV-2 can be present outside the human body in viral fluid particles and can and does live on and/or remains capable of being transmitted and active on inert physical surfaces, including floors, walls, furniture, desks, tables, chairs, countertops, computer keyboards, touch screens, cardboard packages and other items of property for an extended period of time.

44. SARS-CoV-2 can be transmitted by way of human contact with surfaces and items of physical property on which SARS-CoV-2 particles are physically present.

-10-

45.     COVID-19 can and has been contracted from SARS-CoV-2 transmitted by way of human contact with surfaces and items of physical property located at premises in Illinois and Indiana.

46.     The presence of any SARS-CoV-2 particles on physical property renders items of physical property unsafe, impairs its value, usefulness and/or normal function, and causes direct physical harm or loss to property.

47.     The presence of any SARS-CoV-2 particles at or on real property renders the real property unsafe, thereby impairing the real property's value, usefulness and/or normal function.

48.     The presence of people who have contracted COVID-19 or carry the SARS-CoV-2 virus renders physical property and premises in their vicinity unsafe and unusable, resulting in direct physical loss of or damage to that property and premises.

*Illinois' civil authority action and COVID-19*

49.     In response to the damage caused to persons and property because of the pandemic, the Governor of Illinois has issued multiple executive orders pursuant to the authority vested in him by the Illinois Constitution and the laws of Illinois.

50.     Similarly, the Illinois Department of Health, pursuant to its authority under Illinois law, has issued multiple orders, including a Stay At Home Order.

51.     Similarly, the City of Chicago, pursuant to its authority, has issued orders, including orders strictly prohibiting any public or private gathering of more than ten people.

52.     The State of Illinois is a civil authority as contemplated by the Policy.

53.     The Illinois Department of Health is a civil authority as contemplated by the Policy.

54.    The Governor of the State of Illinois is a civil authority as contemplated by the Policy.

55.    The City of Chicago is a civil authority as contemplated by the Policy.

56.    The Mayor of Chicago is a civil authority as contemplated by the Policy.

57.    On March 11, 2020, the World Health Organization characterized the COVID-19 outbreak as a pandemic.

58.    On March 16, 2020, Illinois Governor J.B. Pritzker issued Executive Order 2020-07. Executive Order 2020-07 prohibited all public and private gatherings of 50 people or more, beginning March 18, 2020 and through the duration of the Gubernatorial Disaster Proclamation, in addition other strict mandates. This order was in response to the physical damage caused by COVID-19.

59.    The stated goal of this order was to slow the spread of COVID-19 with the recognition that "frequently used surfaces in public settings...if not cleaned and disinfected frequently and properly, also pose a risk of exposure."

60.    On March 20, 2020, Governor Pritzker issued a Closure Order (Executive Order 2020-10) (a.k.a., a Stay At Home Order) requiring all Illinois residents to stay at home barring exceptions for essential activities. Moreover, the March 20th order reduced the allowable public and private gathering size to no more than 10 people. The March 20th order was again in direct response to the continued and increasing presence of the coronavirus on property or around Plaintiff's premises.

*Indiana civil authority action and COVID-19*

61.    On March 6, 2020, Indiana Governor Eric Holcomb issued an executive order pursuant to the authority vested in him under Indiana law to declare a public health emergency in Indiana.

62.    Governor Holcomb issued an order on March 16, 2020 prohibiting all in-person events of more than fifty people due to COVID-19 and the pandemic. He followed this with a "Stay at Home" order issued on March 23, 2020, directing all non-essential businesses to close and prohibiting all gatherings of more than ten people.

63.    The State of Indiana is a civil authority as contemplated by the Policy.

64.    The Governor of the State of Indiana is a civil authority as contemplated by the Policy.

*Civil Authority Action in Illinois and Indiana caused Plaintiff's Businesses to close*

65.    The State of Illinois and the State of Indiana, through their respective governors and departments of health, have issued, and continue to issue, authoritative orders governing businesses located in their states, including Plaintiff's, in response to the property damage caused by COVID-19, the effect of which have caused Plaintiff to cease operations at, and have prohibited access to, the premises described in the Policy.

66.    Plaintiff has sustained loss and damage as a direct and proximate result of the orders issued by the Governor of Illinois, the Illinois Department of Health, the Governor of Indiana and the Indiana Department of Health.

67.    Plaintiff submitted a timely insurance claim to Defendant.

68.    Defendant has denied Plaintiff's claim.

## COUNT I: DECLARATORY JUDGMENT

69.     Plaintiff incorporates Paragraphs 1 through 71 above as if fully set forth herein.

70.     Pursuant to 28 U.SC. § 2201:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

71.     An actual controversy has arisen between Plaintiff and Defendant as to whether Plaintiff is entitled to coverage under the Policy for losses sustained and to be sustained in the future.

72.     A declaratory judgment as to these questions would terminate the controversy, or some portion thereof, giving rise to this proceeding.

73.      Plaintiff is entitled to and demands a declaration that:

a. Plaintiff sustained direct physical loss or damage to property at their premises described in the Policy as a result of COVID-19 and/or the pandemic;

b. the presence of SARS-CoV-2 in the community and on the premises is a covered cause of loss under the Policy;

c. the pandemic is a covered cause of loss under the Policy;

d. the losses incurred by Plaintiff as the result of the above-referenced orders issued by governmental authorities are covered losses under the Policy;

e. Defendant has not and cannot prove the application of any exclusion or limitation to the coverage for Plaintiff's losses alleged herein;

f. Plaintiff is entitled to coverage for its past and future Business Income loss(es) and Extra Expense resulting from property damage at its premises due to SARS-CoV-2 for the time period set forth in the Policy;

g. Plaintiff is entitled to coverage for loss(es) due to the actions of civil authorities in Illinois and Indiana; and

      h.  Plaintiff has coverage for any substantially similar civil authority order in the future that limits or restricts the access to Plaintiff's places of business and/or their operations.

WHEREFORE, Plaintiff respectfully requests that the Court enter a declaratory judgment in its favor and against Defendant as set forth herein, and for such other and further relief the Court deems just or proper, including attorney fees, interest, and costs as allowed by law or in the exercise of the Court's equitable jurisdiction.

Dated:  December 16, 2020               Respectfully Submitted,
                                   AFM MATTRESS COMPANY, LLC

                                   By:  _*/s/ Bryan D. King*_____
                                       One of its attorneys

Glenn L. Udell (ARDC # 6206064)
Michael S. Pomerantz (ARDC # 6205384)
Bryan King (ARDC # 6279203)
Brown, Udell, Pomerantz & Delrahim, Ltd.
225 W. Illinois Street, Suite 300
Chicago, IL 60654
312-475-9900
gudell@bupdlaw.com
mpomerantz@bupdlaw.com
bking@bupdlaw.com

476701_2

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2020, I electronically filed the attached First Amended Complaint for Declaratory and Other Relief with the Clerk of the U.S. District Court for the Northern District of Illinois using the CM/ECF system reflecting service upon all parties of record.


By: ___*/s/ Bryan D. King*_____

Glenn L. Udell (ARDC # 6206064)
Michael S. Pomerantz (ARDC # 6205384)
Bryan King (ARDC # 6279203)
Brown, Udell, Pomerantz & Delrahim, Ltd.
225 W. Illinois Street, Suite 300
Chicago, IL 60654
312-475-9900
gudell@bupdlaw.com
mpomerantz@bupdlaw.com
bking@bupdlaw.com