UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKLIN EWC, INC., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE HARTFORD FINANCIAL SERVICES GROUP, INC., et al.,<br><br>    Defendants. | Case No. 20-cv-04434-JSC<br><br>**ORDER RE: MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 32 & 33 |

This insurance dispute arises from the COVID-19 pandemic and government closure orders issued to stem its spread. Sentinel Insurance Company, Ltd. ("Sentinel") and Hartford Services Financial Group ("HFSG") move to dismiss Kathy Franklin and Franklin EWC, Inc.'s ("Franklin EWC's") amended complaint on the grounds that Plaintiffs' insurance policy provides no coverage for Plaintiffs' economic losses as a matter of law.[1] After considering Plaintiffs' amended complaint, the parties' written submissions, developments in the legal landscape involving COVID-19 business interruption coverage, and having had the benefit of oral argument on December 10, 2020, the Court GRANTS Defendants' motions to dismiss Plaintiffs' amended complaint.

**BACKGROUND**

The factual background and procedural history of this case are set forth in the Court's September 22, 2020 Order granting Defendants' first motions to dismiss with leave to amend. (Dkt. No. 27.)[2] At issue are provisions from the "Spectrum Business Owner's Policy No. 21 SBA

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 8 & 12.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers placed at the top of the documents.

**EXHIBIT 1**

RS4714" (the "Policy") Franklin EWC entered into with Sentinel. (Dkt. No. 30 ("FAC") ¶ 3.) Following this Court's order on Defendants' first motion to dismiss, Plaintiffs filed an amended complaint. (Dkt. No. 30.) Defendants subsequently filed the instant motions to dismiss, and the motions are fully briefed. (Dkt. Nos. 32-33, 35-38.)

## DISCUSSION

Sentinel moves to dismiss Plaintiffs' claims on the grounds that the Policy's Virus Exclusion bars coverage for Plaintiffs' business losses and that Plaintiffs fail to otherwise state plausible claims for relief.

**A. The Virus Exclusion**

The Policy's Special Property Coverage Form provides that the insurer "will pay for direct physical loss of or physical damage to Covered Property at the premises . . . caused by or resulting from a Covered Cause of Loss." (Dkt. No. 10-1 at 31.)[3] A "Covered Cause of Loss" is defined as a "RISK[] OF DIRECT PHYSICAL LOSS" unless the loss is excluded by the Policy's "Exclusions" section. (*Id.* at 32.) The FAC alleges that the proliferation of coronavirus causes "direct physical damage and loss" triggering coverage under the Policy. (FAC ¶ 8). According to Plaintiffs, recent business closure orders issued pursuant to the State of California's Executive Order N-33-20 and other public health orders (the "Closure Orders") were issued because "the [c]oronavirus was proliferating onto virtually every surface and object in, on, and around commercial premises such as [EWC Fresno], and thereby causing **direct physical damage and loss** in and to the immediate area of such commercial premises[.]" (*Id.* (emphasis in original) (citing Orders of Napa and Sonoma County Health Officers).)

Sentinel contends that the Policy excludes from its coverage losses caused directly or indirectly by a virus:

---

[3] The Court may consider the Policy's content under the incorporation by reference doctrine. *Biltmore Assocs., LLC v. TwinCity Fire Ins. Co.*, 572 F.3d 663, 665 n.1 (9th Cir. 2009) ("A court may consider documents, such as the insurance policies, that are incorporated by reference into the complaint.")

2

> i. **"Fungi", Wet Rot, Dry Rot, Bacteria And Virus**
>
> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
>
> (1) Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or virus.

(Dkt. No. 10-1 at 127.)

Sentinel has met its burden of showing that the Virus Exclusion applies to the FAC's coverage allegations. *See State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 321 (9th Cir. 1989) ("[T]he insurer bears the burden of proving . . . the applicability of an exclusion[.]") (citation omitted). The Virus Exclusion's plain and unambiguous language excludes coverage for losses caused directly or indirectly by a virus. The FAC alleges that the coronavirus is a virus (FAC ¶ 5) and that it was "physical[ly] presen[t]" and "proliferat[ed]" onto EWC Fresno's premises. (FAC ¶¶ 9, 19.) The FAC further repeatedly alleges that the coronavirus caused—and continues to cause—the direct risk of physical loss required to establish a Covered Cause of Loss under the Policy. (FAC ¶¶ 8, 19, 49, 61) Therefore, drawing all inferences in the FAC in Plaintiff's favor, *see Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012), the FAC alleges that the coronavirus is the direct or indirect cause of Plaintiffs' economic loss, and thus the Virus Exclusion bars coverage under its plain and unambiguous language, *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, No. 20-CV-04434-JSC, 2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020); *see also Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995), *as modified on denial of reh'g* (Oct. 26, 1995) ("The clear and explicit meaning of the [policy] provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage [] controls judicial interpretation.") (internal quotations and citations omitted).

The caselaw addressing COVID-19 business interruption coverage following this Court's

prior Order is consistent with the Court's reasoning. Confronted with the same or similar virus exclusion provisions, numerous courts have determined that these provisions exclude coverage for business losses related to COVID-19. *See, e.g.*, *Founder Inst. Inc. v. Hartford Fire Ins. Co.*, No. 20-CV-04466-VC, 2020 WL 6268539, at *1 (N.D. Cal. Oct. 22, 2020); *see also Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, No. 1:20-CV-22833, 2020 WL 6392841, at *9 (S.D. Fla. Nov. 2, 2020) ("Assuming for argument's sake that Plaintiffs had alleged facts triggering coverage under the Policy, the virus exclusion would still apply to bar coverage for Plaintiffs' losses."); *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Companies*, No. 2:20-CV-05663-VAP-DFMx, 2020 WL 6440037, at *6 (C.D. Cal. Oct. 27, 2020) ("[T]he Virus Exclusion precludes coverage [because the complaint] contains multiple admissions that [the plaintiffs'] losses were caused directly or indirectly by a virus[.]"); *Natty Greene's Brewing Co., LLC v. Travelers Cas. Ins. Co. of Am.*, No. 1:20-CV-437, 2020 WL 7024882, at *4 (M.D.N.C. Nov. 30, 2020) ("The policies unambiguously exclude coverage for loss or damage caused directly or indirectly by, or resulting from, any virus.").

Plaintiffs' insistence that the Virus Exclusion "relates solely to contamination on the insured premises" and that had Sentinel "intended to exclude risks associated with a pandemic[,]" the Policy could have referred explicitly to these risks or included a specific exclusion "targeted at pandemics (FAC ¶ 78) is unavailing. Nothing in the Virus Exclusion indicates it is limited to viruses arising from the insured premises rather than a pandemic. Other courts have arrived at similar conclusions. In *Nahmad*, "[the plaintiffs] offer[ed] no basis for construing 'COVID-19' or the 'pandemic' as a non-virus for purposes of [a virus] exclusion," and the court determined that "they could [not] plausibly do so as the global spread, proliferation, and activity of 'coronavirus' is the underlying pandemic at issue." *Nahmad*, 2020 WL 6392841, at *10. In *Boxed Foods Co., LLC v. California Capital Ins. Co.*, No. 20-CV-04571-CRB, 2020 WL 6271021, at *5 (N.D. Cal. Oct. 26, 2020), *as amended* (Oct. 27, 2020), the court analyzed a virus exclusion that, like Sentinel's Virus Exclusion, "contemplate[d] situations where a virus indirectly contributes to or worsens a loss." The *Boxed Foods* court determined that the exclusion's language unambiguously barred coverage for business losses related to the COVID-19 pandemic, because "[e]ven if the

4

[c]ourt accept[ed] [the plaintiffs'] distinction between a stand-alone virus and a pandemic, only COVID-19 can cause the COVID-19 pandemic and subsequently, civil authority orders and business income losses." *Id.* For this reason "COVID-19 remain[ed] the 'indirect' cause of the insured's harm," and therefore barred the plaintiffs' recovery for economic losses under their policy—notwithstanding the plaintiffs' efforts to characterize the virus exclusion as applying only to stand-alone viruses, not those that "escalate into a pandemic." *Id.*

The Court finds this reasoning persuasive. Contract interpretation is a matter of law, and "[c]ourts [should] not strain to create an ambiguity where none exists." *Waller*, 11 Cal. 4th at 18-19 (citation omitted). When interpreting a contract, the parties' mutual intent at the time of formation governs and "[s]uch intent is to be inferred, if possible, *solely* from the written provisions of the contract. *Id.* at 18 (citations omitted) (emphasis added); *see also Roug v. Ohio Sec. Ins. Co.*, 182 Cal. App. 3d 1030, 1035 (1986) ("An insurance policy is but a contract, and, like all other contracts it must be construed from the language used; when the terms are plain and unambiguous, it is the duty of courts to enforce the agreement.").

In sum, the Virus Exclusion applies under its plain and unambiguous language. Plaintiffs' new allegations do not—and cannot—change its clear and explicit meaning. *See AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990).

### B. Regulatory Estoppel

Plaintiffs allege that the doctrine of regulatory estoppel bars enforcement of the Virus Exclusion. (FAC ¶¶ 79-89.) Fundamentally, Plaintiffs contend that two industry trade groups made false representations to state insurance regulators in 2006 when seeking approval for the Virus Exclusion, and that HFSG represented itself and Sentinel in this effort. (FAC ¶ 80.) According to Plaintiffs, these trade groups, the Insurance Service Office ("ISO") and American Association of Insurance Services ("AAIS"), represented to regulators that the Virus Exclusion was only meant to "clarify" that coverage for "disease-causing agents" had never been in effect and was never intended to be included in policies such as the one between Sentinel and Plaintiffs—that, fundamentally, adopting the Virus Exclusion would not change a policy's scope of coverage. (FAC ¶¶ 80-81, 83, 88.) Plaintiffs allege that state insurance departments relied on

5

these misrepresentations in approving the Virus Exclusion for inclusion in "standard comprehensive policies." (*Id.* ¶ 86.)

Plaintiffs' regulatory estoppel argument does not save their coverage claim from the Virus Exclusion. California courts reject the regulatory estoppel doctrine. *See ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*, 17 Cal. App. 4th 1773, 1797 n.39 (1993), *as modified* (Sept. 21, 1993) ("Some jurisdictions—but not California—allow extrinsic evidence even where contract terms are unambiguous . . . . [a]nd some jurisdictions have relied on an 'estoppel' or regulatory history rationale not necessarily related to any textual ambiguity."); *see also SnyderGeneral Corp. v. Great Am. Ins. Co.*, 928 F. Supp. 674, 682 (N.D. Tex. 1996), *aff'd sub nom. SnyderGeneral Corp. v. Cont'l Ins. Co.*, 133 F.3d 373 (5th Cir. 1998) ("The regulatory estoppel argument has been rejected by virtually every other state and federal court to address the issue.") (citing *ACL Technologies*, 17 Cal. App. 4th 1773). Plaintiffs cite *Sunbeam Corp. v. Liberty Mutual Insurance Co.*, 781 A.2d 1189, 1192-93 (Pa. 2001), for the proposition that they should be allowed to present factual evidence in support of their regulatory estoppel claim. (Dkt. No. 36 at 22.) However, *Sunbeam* was decided by the Pennsylvania Supreme Court and carries no weight in California where the doctrine of regulatory estoppel is not recognized. Plaintiffs' citation to *Cooper v. Travelers Indem. Co. of Illinois*, No. C-01-2400-VRW, 2002 WL 32775680, at *5 (N.D. Cal. Nov. 4, 2002), fares no better. While *Cooper* applied California law, it did not concern the doctrine of regulatory estoppel; Plaintiffs cite *Cooper* for the proposition that, at the time of regulatory approval, ISO and AAIS were allegedly aware that insurance policies had been interpreted to cover claims for property damage from disease-causing agents. *See Cooper*, 2002 WL 32775680, at *3-5. Thus, *Cooper* does not support Plaintiffs' argument that the doctrine of regulatory estoppel bars enforcement of the Virus Exclusion.

The *Boxed Foods* court rejected a similar argument that ISO misled state regulators regarding the scope of its virus exclusion provision to secure the exclusion's approval—and that these alleged misrepresentations evinced the virus exclusion at issue did not bar recovery for the plaintiffs' economic losses—because "[e]ven if ISO mispresented the purpose and scope of its [v]irus [e]xclusion [provision], [p]laintiffs' theory [would] require[] the [c]ourt to construe [the

6

1  defendant's] plain, unambiguous Virus Exclusion to mean the exact opposite of its ordinary

2  meaning." *Boxed Foods*, 2020 WL 6271021, at *6.  The Court likewise declines to depart from

3  the "rules of insurance contract interpretation [that] clearly require a showing of ambiguity before

4  extrinsic evidence may be admitted to shed light on that ambiguity[,]" *ACL Technologies*, 17 Cal.

5  App. 4th at 1790-91, and, as such, finds Plaintiffs' allegations regarding ISO's conduct are of no

6  moment in its analysis of the unambiguous Virus Exclusion's application to Plaintiffs' claims and

7  business losses.

### C. Limited Virus Provision

Plaintiffs argue in the alternative that, even if the Virus Exclusion bars their claims, they are entitled to coverage under the Policy's Limited Virus exception to the Virus Exclusion.  The Policy provides "LIMITED FUNGI, BACTERIA, OR VIRUS COVERAGE" up to $50,000 that applies where fungi, wet and dry rot, bacteria or a virus is the result of one or more "specified cause of loss" elsewhere defined as: "Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." (Dkt. No. 10-1 at 55, 128).

Plaintiffs have not met their burden of showing that their business losses are covered under the Policy's Limited Virus provision.  *See Aydin Corp. v. First State Ins. Co*., 18 Cal. 4th 1183, 1188 (1998), *as modified on denial of reh'g* (Oct. 14, 1998).  They do not allege that the virus was caused by any specified cause of loss, only that the requirement is impossible to satisfy and thus "renders the Limited Virus Coverage illusory."  (FAC ¶ 113; Dkt. No. 36 at 13.)  The FAC alleges that viruses do not result from any "specified cause of loss" as defined in the Policy, and instead that they emerge from evolutionary processes involving genetic mutations in cells.  (FAC ¶ 34; Dkt. No. 36 at 14.)  Plaintiffs contend that—unlike other agents covered by the Limited Virus provision, such as fungi, wet and dry rot, and bacteria—viruses cannot reproduce without access to living cells.  Therefore, losses caused by a virus cannot be covered by the Limited Virus provision because its "specified cause[s] of loss" are "extracellular" and incapable of causing a virus.  For these reasons, Plaintiffs conclude, the Limited Virus provision's "specified cause of

United States District Court
Northern District of California

loss" requirement renders coverage under the provision for virus-related losses illusory, or virtually illusory, and the "specified cause of loss" requirement is unenforceable. (Dkt. No. 36 at 16.)

Plaintiffs' assertion that a virus could never be caused directly or indirectly by any of the specified causes of loss is not plausible. *Curtis O. Griees & Sons, Inc. v. Farm Bureau Ins. Co. of Nebraska*, 528 N.W.2d 329 (Neb. 1995), is instructive. In *Curtis*, the Supreme Court of Nebraska determined that a tornado carried a pseudorabies virus to the plaintiff's swine "insured by defendant insurance company for physical loss caused directly by an applicable peril," where windstorms were covered perils under the policy. *Id.* at 331. The court determined that the virus "ha[d] been transmitted by means of a covered peril" and that "[a]bsent the windstorm, there would have been no infection of plaintiff's swine." *Id.* at 333. Plaintiffs' attempt to distinguish *Curtis* based on the defendant not having contested that the windstorm transmitted the virus to the swine, *id.* at 331, does not save their argument. The court explained that "where a virus has been transmitted by means of a covered peril, the covered peril has been held to be the proximate cause of the loss." *Id.* at 333 (citing *Qualls v. Farm Bureau Mut. Ins. Co.*, 184 N.W.2d 710, 713 (Iowa 1971)). Plaintiffs do not allege that none of the specified covered causes of loss could transmit a virus; thus, *Curtis* demonstrates that the limited virus coverage is not illusory.

However, even without *Curtis*'s illustration that it is not factually impossible for a virus to be caused by a "specified cause of loss," an insurance policy provision is only illusory where it results in a "complete lack of any policy coverage." *Secard Pools, Inc. v. Kinsale Ins. Co.*, 318 F. Supp. 3d 1147, 1153 (C.D. Cal. 2017), *aff'd sub nom. Secard Pools Inc v. Kinsale Ins. Co.*, 732 F. App'x 616 (9th Cir. 2018); *see also Young v. Illinois Union Ins. Co.*, No. C07-05711SBA, 2008 WL 5234052, at *1 (N.D. Cal. Dec. 15, 2008), *aff'd*, 366 F. App'x 777 (9th Cir. 2010) (stating that "[i]n order for a policy to be deemed illusory, it must afford no coverage whatsoever" and a disputed policy exclusion "d[id] not render the policy illusory"); *Scottsdale Ins. Co. v. Essex Ins. Co.*, 98 Cal. App. 4th 86, 95 (2002) ("An agreement is illusory and there is no valid contract when one of the parties assumes *no* obligation") (citation omitted) (emphasis added); *Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 836 (2006) (finding that insurance policy's exclusion did not

render coverage illusory where "not every lawsuit that could conceivably be brought against the [insured] would necessarily arise out of [the exclusion]"). "[T]he mere *possibility* of *some* coverage is enough" to defeat Plaintiffs' argument that coverage under the Limited Virus provision is illusory, *Secard Pools*, 318 F. Supp. 3d at 1153 (original emphasis), and here the provision provides "the possibility of some coverage that is not excluded," *Crusader Ins. Co. v. Burlington Ins. Co.*, No. CV 1905371 PSG (PLAx), 2020 WL 4919387, at *10 (C.D. Cal. June 12, 2020).

As such, Plaintiffs have not met their burden of showing the Limited Virus provision affords no possibility of coverage, *see Secard Pools*, 318 F. Supp. 3d at 1153, and have therefore failed to show the provision, including its "specified cause of loss" requirement, is illusory.[4]

Plaintiffs additionally argue that the "specified cause of loss" requirement is unenforceable because it violates the reasonable expectation of having "some" Limited Virus Coverage. (Dkt. No. 36 at 17.) Under Plaintiffs' theory, the Policy's introductory declarations give no indication that the Limited Virus provision's scope is "virtually non-existent" based on its "specified cause of loss" requirement, and the declarations' indication that the Limited Virus provision provides coverage up to $50,000 "provided [Plaintiffs] with a reasonable expectation that there would be a reasonable number of factual scenarios" in which there would be limited coverage under the Policy for virus-caused losses. (*Id.* at 20.)

However, "courts do not evaluate the reasonable expectations doctrine when a policy's

---

[4] Plaintiffs aver that the Limited Virus provision is unenforceable under California law because it is "virtually illusory." (Dkt. No. 36 at 16.) Plaintiffs' cases cited in support of this proposition, however, are inapposite. *Julian v. Hartford Underwriters Ins. Co.*, 35 Cal. 4th 747, 756 (2005), *as modified* (May 5, 2005), concerned damage from a landslide, California Insurance Code § 530, and the "efficient proximate cause doctrine." The *Julian* court expressed concern over "virtually illusory" insurance provisions where "insurers[] attempt[ed] to contract around the proximate cause doctrine through sweeping language that would have rendered the policies' coverage terms virtually illusory." *Id.* Similarly, *Howell v. State Farm Fire & Cas. Co.*, 218 Cal. App. 3d 1446 (1990), *disapproved of on other grounds by Reid v. Google, Inc.*, 50 Cal. 4th 512 (2010), concerned landslide-related damage and section 530's requirement that an insurer "provide coverage whenever an insured peril is the 'efficient proximate cause' of the loss.'" *Id.* at 1452 (citation omitted). In this context, the *Howell* court reasoned, "giv[ing] full effect" to policy language that "exclud[ed] coverage whenever an excluded peril [was] a contributing or aggravating factor in the loss" would give insurers "carte blanche" to deny coverage." *Id.* at 1456 n.6. These cases are factually distinguishable and were decided regarding—and in the context of—a different legal doctrine.

9

language is clear and unambiguous." *Boxed Foods Co., LLC*, 2020 WL 6271021, at *5 (collecting cases). Here, the Limited Virus provision is clear: when a virus is caused by a specified cause of loss defined in the Policy, the insured party may receive up to $50,000 in coverage. (Dkt. No. 10-1 at 55, 128). Moreover, accepting Plaintiffs' theory would render the Limited Virus provision a nullity. If every insured person's expectations for coverage were defined by policies' brief, prefatory declarations, any additional policy provisions would be "unenforceable." Not so. "An insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected." *Nat'l Ins. Underwriters v. Carter*, 17 Cal. 3d 380, 386 (1976) (internal quotations and citation omitted). Because the Limited Virus provision is unambiguous the reasonable expectations doctrine does not apply, *see Boxed Foods*, 2020 WL 6271021, at *5, and the Court must respect the provision's plain language, *see National Insurance*, 17 Cal. 3d at 386.

\* \* \*

Plaintiffs' contract-based claims for breach of contract, breach of covenant of good faith and fair dealing, and bad faith denial of an insurance claim are dismissed as to both defendants. Drawing all reasonable inferences from the complaint's allegations in Plaintiffs' favor, *see Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012), the Virus Exclusion applies as a matter of law. Plaintiffs' UCL claims are likewise predicated on the Policy, and are therefore likewise dismissed. Because the unambiguous Virus Exclusion applies, the FAC's claim for declaratory relief must be dismissed with prejudice. *See Osseous Techs. of Am., Inc. v. DiscoveryOrtho Partners LLC*, 191 Cal. App. 4th 357, 365 (2010) ("Declaratory relief pursuant to [Cal. Civ. Proc. § 1060] has frequently been used as a means of settling *controversies* between parties to a contract regarding the nature of their contractual rights and obligations.") (internal quotation marks and citations omitted) (emphasis added); *Wilson & Wilson v. City Council of Redwood City*, 191 Cal. App. 4th 1559, 1582 (2011) ("To qualify for declaratory relief . . . [a party] must [] present an *actual controversy*[.]") (internal quotation marks omitted and emphasis added) (citing Cal. Civ. Proc. § 1060); *Brownfield v. Daniel Freeman Marina Hosp.*, 208 Cal. App. 3d 405, 410 (1989) ("[Section 1060's] 'actual controversy' requirement concerns the

1    existence of *present* controversy relating to the legal rights and duties of the respective parties

2    pursuant to contract[.]") (original emphasis).

### C. Fraud-Based Claims

Plaintiffs' claim for fraudulent misrepresentation fails the heightened pleading standard for fraud claims. *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.") (citation omitted). The FAC alleges that Defendants made affirmative misrepresentations regarding the Policy's scope of coverage for business interruption losses and its Limited Virus provision, "facts surrounding Plaintiffs' regulatory estoppel argument," and that Defendants "concealed" from Plaintiffs that they would not pay any claims during a pandemic or under the Limited Virus provision. (FAC ¶ 119). It is unclear, however, where, when, or how these misrepresentations were made, or by whom. *See Vess*, 317 F.3d at 1106. It is also unclear when, where, or how Defendants made false or misleading statements when they sold Plaintiffs the Policy. (FAC ¶ 120.) At oral argument, Plaintiffs conceded that there is no proof of when, where, or how specific, fraudulent representations were made to Ms. Franklin that could satisfy Rule 9(b)'s heightened standard; instead, Plaintiffs rely on the theory that Sentinel made implicit misrepresentations by selling the Policy that did not provide "full coverage for business interruption" or would not "pay any claims during a pandemic." (FAC ¶ 119.) This theory does not satisfy the heightened pleading standard. *See Vess*, 317 F.3d at 1106.

Plaintiffs' constructive fraud claim fails for substantially the same reason. Constructive fraud claims are subject to the particularity requirement under Federal Rule of Civil Procedure 9(b). *See Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 667–68 (9th Cir.), *cert. denied*, 140 S. Ct. 223 (2019). Therefore, Plaintiffs must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false" to make out a claim for constructive fraud. *Id.* at 668 (internal quotation marks and citation omitted). Plaintiffs' conclusory allegations that Defendants owed Plaintiffs fiduciary and quasi-fiduciary duties, as well as that Defendants took "unfair advantage" of Plaintiffs, do not meet Rule 9(b)'s standard, nor can any allegations motivating the fraudulent

misrepresentation claim sustain a claim for constructive fraud.  (FAC ¶¶ 127-28.)

The FAC's allegations are insufficient to support Plaintiffs' fraud-based claims.  For this reason, and given Plaintiffs' statements at oral argument, the fraud-based claims are dismissed with prejudice as to both defendants.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Sentinel's and HFSG's motions to dismiss.  Plaintiffs' claims against Sentinel and HFSG for breach of contract, breach of covenant of good faith and fair dealing, bad faith denial of an insurance claim, violations of the UCL, and declaratory relief are dismissed with prejudice. Given the Virus Exclusion's and Limited Virus provision's plain and unambiguous language, leave to amend would be futile.  Because at oral argument Plaintiffs failed to articulate any facts on which the fraud-based claims could satisfy the heightened pleading standard, Plaintiffs' fraud-based claims are likewise dismissed with prejudice. Judgment must be entered in favor of Defendants and against Plaintiff.

This Order disposes of Dkt. Nos. 32 & 33.

**IT IS SO ORDERED.**

Dated: December 14, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge