# EXHIBIT 1

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| Steve Foley Cadillac, Inc. d/b/a Steve Foley Cadillac, Bentley of Northbrook, Steve Foley Rolls Royce, Rolls Royce Motor Cars Chicago; Napleton's Auto Werks, Inc., d/b/a Napleton's Audi, Napleton's Honda, Napleton Mercedes Benz; Napleton 6677, Inc. d/b/a Land Rover Rockford, Jaguar Rockford; and Napleton Motor Corp. d/b/a Napleton Porsche, Napleton Subaru,<br><br>      Plaintiffs,<br><br>    v.<br><br>New York Marine and General Insurance Company, and Corkill Insurance Agency, Inc.,<br><br>      Defendants. | No. 20-L-6774<br><br>Calendar S<br><br>Judge Jerry A. Esrig |

# ORDER

New York Marine and General Insurance Company ("New York Marine") moves under 735 ILCS 5/2-615 to dismiss, with prejudice, the complaint filed by the plaintiffs named above. For the reasons below, the motion is granted.

## I.

A section 2-615 motion to dismiss attacks the sufficiency of a complaint and raises the question of whether a complaint states a cause of action upon which relief can be granted. *Fox v. Seiden*, 382 Ill. App. 3d 288, 294 (1st Dist. 2008). All well-pleaded facts must be taken as true and any inferences should be drawn in favor of the non-movant. 735 ILCS 5/2-615; *Hammond v. S.I. Boo, LLC*, 386 Ill. App. 3d 906, 908 (1st Dist. 2008). Plaintiffs are not required to prove their case at the

pleading stage; they are merely required to allege sufficient facts to state all elements which are necessary to constitute each cause of action in their complaint. *Visvardis v. Eric P. Ferleger, P.C.*, 375 Ill. App. 3d 719, 724 (1st Dist. 2007). A section 2-615 motion should not be granted unless no set of facts could be proved that would entitle the plaintiff to relief. *Beacham v. Walker*, 231 Ill. 2d 51, 58 (2008).

II.

Plaintiffs are Illinois corporations in the business of selling and repairing automobiles.[1] Defendant New York Marine is a New York company in the business of selling commercial property insurance to Illinois businesses such as plaintiffs. Plaintiffs are insured by New York Marine under two policies. The first policy was issued to the first four plaintiffs ("Foley plaintiffs") and the second was issued to the last three plaintiffs ("Napleton plaintiffs"). The policies provide identical coverage.

In support of their complaint, plaintiffs allege the following:

As of March 9, 2020, plaintiffs sustained physical damage to insured property and business income losses caused by the COVID-19 pandemic and related governmental orders.[2] Specifically, after one of plaintiffs' executive officers, among others, became infected with, and spread the COVID-19 virus at plaintiffs' businesses, the presence of COVID-19 virus molecules in plaintiffs' insured properties caused direct physical damage to the air quality, surfaces, personnel, services, and interests of plaintiffs. Such damage, in conjunction with Governor Pritzker's Executive Orders, forced plaintiffs to restrict, slowdown, or cease ordinary business activities, causing (1) a loss of business income, (2) a substantial amount of plaintiffs' labor force being furloughed, (3) a substantial amount of plaintiffs' contracts with its labor forces being suspended or cancelled, and (4) an increase in expenses to continue business operations.

Plaintiffs claim they are entitled to coverage for their losses pursuant to the policies issued to them by defendant and bring three counts for New York Marine's failure to issue such coverage: Count I (Declaratory Judgment), Count II (Breach of

---

[1] For the purposes of the motion, the court takes as true the well-pleaded allegations of the complaint to the extent they are not contradicted by any exhibits attached thereto. *Bd. of Managers v. Pasquinelli, Inc.*, 354 Ill. App. 3d 749, 759 (1st Dist. 2004).

[2] The court takes judicial notice of the COVID-19 pandemic and related governmental orders issued by Governor J.B. Pritzker.

Contract), and Count III (Vexatious Misconduct, pursuant to 215 ILCS 5/155). The court first examines Count II.

### III.

Under section 2-615, defendant moves to dismiss Count II (Breach of Contract) on grounds that (1) plaintiffs failed to allege a "direct physical loss of or damage to covered property" as required by the policies, and (2) the Virus Exclusion precludes recovery. The court agrees.

### A.

To state a cause of action for breach of contract, plaintiffs must allege the existence of a valid and enforceable contract, substantial performance by plaintiffs, breach of the contract by defendants and resultant injury to plaintiffs. *Oliva v. Amtech Reliable Elevator Co.*, 366 Ill. App. 3d 148, 152 (2006). Where the contract is one for insurance, the burden is on the insured to prove that its claim falls within the scope of the insurance policy's coverage. *Addison Ins. Co. v. Fay*, 232 Ill. 2d 446, 453 (2009); *St. Michael's Orthodox Catholic Church v. Preferred Risk Mut. Ins. Co.*, 146 Ill. App. 3d 107, 109 (1st Dist. 1986) ("[T]he existence of coverage is an essential element of the insured's case, and the insured has the burden of proving that his loss falls within the terms of his policy."). The burden is on the insurer, however, to affirmatively prove that an exclusion in an insurance policy applies. *United Nat'l Ins. Co. v. Faure Bros. Corp.*, 409 Ill. App. 3d 711, 717 (2011) (citation omitted).

Provisions that limit or exclude coverage to the insured must be construed liberally in favor of the insured and strongly against the insurer. *United States Fire Ins. Co. v. Aetna Life & Cas.*, 291 Ill. App. 3d 991, 997 (1997) (citations omitted). Nonetheless, insurance contracts are subject to the same rules of construction as other types of contracts, *Int'l Surplus Lines Ins. Co. v. Pioneer Life Ins. Co.*, 209 Ill. App. 3d 144, 148 (1990) (citations omitted). When interpreting such contracts, the court must not distort the meaning of the policy language to reach a desired result, nor may the court invent ambiguities where none exist. *Id*. Rather, the court must examine the contract as a whole, give effect to the parties' intentions, and, if the words are unambiguous, afford them their plain, ordinary, and popular meaning. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992) (citations omitted).

B.

Section A (Coverage) to the Building and Personal Property Coverage Form attached to the policies provides that New York Marine will pay for "***direct physical loss of or damage to Covered Property***" resulting from any "Covered Cause of Loss." *See*, policies attached as Exhibits A and B to the Mot. to Dismiss (emphasis added). "Covered Property" includes plaintiffs' buildings, business personal property, and the personal property of others. *Id*. "Covered Causes of Loss" is defined by Section A to the "Causes of Loss Special Form" as "***direct physical loss*** unless the loss is excluded or limited in this policy." *Id*. (emphasis added).

While the parties agree that to trigger coverage under the policies, the insured must allege a "direct physical loss of or damage to covered property," the parties disagree as to what constitutes physical loss or damage to property sufficient to trigger coverage. At the outset, the Court notes that both parties cite numerous cases from other jurisdictions in their briefs in support of their arguments. These cases, while not binding, "are persuasive authority" and are "entitled to respect." *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill. App. 3d 381 (2005). Nevertheless, "Illinois courts do not look to the law of other states where there is relevant Illinois case law available." *In re Estate of Walsh*, 2012 IL App (2d) 110938, ¶ 45.

Plaintiffs' claim of physical loss or damage rests on the following allegation:

> COVID-19 molecules physically infect surfaces, remain on infected surfaces for considerable periods of time, and can remain on infected surfaces for up to four weeks in low temperatures.

Complaint at ¶ 52. In other words, the COVID-19 molecules rest on a surface and temporarily contaminate it for a finite period, during and after which the surface remains unchanged. In this respect, the COVID-19 virus is no different than other viruses or bacteria which frequently, if not continually, temporarily contaminate virtually all surfaces. Such viruses and bacteria present threats of varying degrees to the health of those who come into contact with those surfaces, although, undoubtedly, the COVID-19 threat is extraordinary because of the combination of its lethality and transmissibility.

As a matter of plain English, such temporary contamination does not represent physical loss of or damage to property.

4

"[B]ecause the primary objective in interpreting the provisions of an insurance policy is to give effect to the parties' intentions, where a policy provision is clear and unambiguous, its language must be taken in its plain, ordinary and popular sense." *Id.* at 303 (2001). Moreover, "the 'usual and ordinary' meaning of a phrase is 'that meaning which the particular language conveys to the popular mind, to most people, to the average, ordinary, normal [person], to a reasonable [person], to persons with usual and ordinary understanding, to a business [person], or to a layperson.'" *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill. 2d 278, 301 (2001), quoting *Outboard Marine Corp.*, 154 Ill. 2d 90, 116 (1992).

In *Travelers*, the Illinois Supreme Court expressly held that "under the plain meaning of the word, a 'physical' injury occurs when property is altered in appearance, shape, color or in other material dimension, and does not take place upon the occurrence of an economic injury, such as diminution in value." *Id.* at 308. Here, plaintiff does not and cannot allege that its property was altered in appearance, shape, color or other material dimension. Temporary contamination of a surface by bacteria and viruses appearing naturally in the environment does not constitute physical damage to that surface within the usual and ordinary meaning of that phrase. Instead, plaintiff seeks to recover for diminution of value, loss of use and other economic loss as a result of contamination.

*Travelers* leaves no doubt that Illinois law requires actual physical injury to property. *Travelers* specifically rejected a Seventh Circuit decision which held that "the term 'physical injury' does not require that the covered property actually be 'injured' in a 'physical' sense … , but only that the claimants suffered *any* 'loss that results from physical contact, physical linkage' with the defective … systems." *Id* at 303, quoting *Eljer Manufacturing Corp. v. Liberty Mutual Insurance Co.*, 972 F.2d 805, 810 (7th Cir. 1982). In *Eljer,* the Seventh Circuit held that physical damage to property occurred when a defective plumbing system was incorporated into a home even though the system had not yet actually malfunctioned. *Travelers* expressly rejected this holding. Thus, where the language of an Illinois comprehensive general liability insurance policy expressly requires a "physical" injury to trigger coverage, such language unambiguously contemplates an "alteration" to the covered property. *Id.* at 311.

5

Plaintiffs rely on Illinois asbestos cases, including *United States Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64 (1991) and *Board of Educ. v. International Ins. Co.*, 308 Ill. App. 3d 597 (1997). Both of these cases were decided before *Travelers*. In rejecting *Eljer, Travelers* addressed *Wilkin* and asbestos as follows:

> We held [*in Wilkin*] that "asbestos fiber contamination constitutes physical injury to tangible property, *i.e.*, the buildings and their contents." Although, in the *Eljer* majority's view, the basis of our holding was unclear, we specifically explained that the property was "physically" injured as a result of the presence of toxic asbestos fibers within the structures, as "the buildings and their contents (*e.g.*, carpets, upholstery, drapes, etc.) are virtually contaminated or impregnated with asbestos fibers, the presence of which poses a serious health hazard to the human occupants." Thus, this court concluded that "the contamination of the buildings and their contents" due to the continuous release of these toxins constituted "physical injury" under the policies.

197 Ill. 2d at 305-06, quoting *Wilkin*, 144 Ill. 2d at 75, 77-78.

Clearly, like asbestos, COVID-19 represents a serious health risk; but, unlike asbestos, the COVID-19 virus is not "released" from components or systems which are a part of plaintiff's property. COVID-19 occurs naturally in the environment. And, unlike asbestos which continues to contaminate until it is affirmatively removed or abated, COVID-19 dissipates without intervention. *See* Compl. ¶ 52. Moreover, there is no legal duty to remove the COVID-19 virus from the premises, as there is with friable asbestos. *See Board of Education v. A, C & S, Inc.* 131 Ill. 2d 428, 446 (1989).

To the extent plaintiffs rely on asbestos-related cases, like *Wilkin*, to suggest that the Illinois Supreme Court dispensed with the requirement that a "physical" loss be a tangible alteration to covered property, this is incorrect. First, in *Wilkin* and the other asbestos cases, the Illinois courts hold that asbestos contamination *satisfied* the "physical injury to tangible property" requirement, not that the requirement was eliminated. Second, *Travelers* was decided after *Wilkin* and reiterates the requirement of an actual physical injury.

6

Finally, in *Board of Education*, 131 Ill. 2d 428 (1989), the court cautioned that its holding "should not be construed as an invitation to bring economic loss contract actions within the sphere of tort law through the use of some fictional property damage." 131 Ill. 2d 428, 445 (1989). In Illinois, the asbestos holdings have not been extended to cover temporary contamination from bacteria and viruses. To do so would open the door to an almost infinite array of contamination cases involving viruses and bacteria. The test for physical injury would no longer be a tangible impact on property, but rather the degree of harm to others caused by the contaminant. As a practical matter, this approach would dispense with a physical injury requirement in favor of an economic loss approach. This is precisely contrary to the Supreme Court's warning in *Board of Education*.

Plaintiffs also cite *Posing v. Merit Ins Co.*, 258 Ill. App. 3d 827, 824 (3rd Dist. 1994), but this case offers no support to plaintiffs. In *Posing*, plaintiff, an exterminator, obtained a declaration that it was entitled to a defense and indemnification from its insurer for claims brought by disgruntled customers, each of whom alleged they were required to repair their property as a result of termite infestations which the exterminator had failed to control. The appellate court affirmed as to the exterminator's entitlement to a defense, but reversed as to the insurer's duty to indemnify, finding the trial court's determination to be premature. The insurer argued that the exterminator had not suffered any physical damage to its property, but the court focused on the underlying complaints, finding that "[f]actually, each of the underlying complaints alleges 'property damage' in that the subject real estate was partially destroyed by pest infestation allegedly resulting from Posing's faulty inspection or treatment." *Id.* at 834. In the case at bar, there is no such destruction of property.

To the extent plaintiff relies on the Business Income and Extra Expenses Coverage Form and the Equipment Breakdown Form, its claim fails for the same reason. Each of these coverages requires physical damage to property.

The Business Income Form offers coverage for the "actual loss of Business Income [the insured] sustain[s] due to the necessary 'suspension' of [its] 'operations' during the 'period of restoration,'" but only where such suspension is "caused by a direct physical loss of or damage to property at premises." *See,*

Exs. A and B. For the reasons stated above, such loss or damage has not been and cannot be alleged.

Nor do plaintiffs qualify for additional coverage as provided under Section 5(a) of the Business Income Form ("Civil Authority Provision) which provides as follows:

> When a Covered Cause of Loss causes damage to property **other** than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that **prohibits access** to the described premises, provided that **both** of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is **prohibited** by civil authority as a result of the **damage**, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in **response** to **dangerous physical conditions** resulting from the **damage** or **continuation** of the Covered Cause of Loss that caused the damage...

*Id.* (emphasis added). Since a "covered cause of loss" requires "direct physical loss," as discussed above, plaintiffs fail to meet this requirement. Moreover, plaintiffs fail to allege a damage to property other than at the insured premises or that the Civil Authority limited access to the covered premises as a result of damage to such other property. Here, to the extent that there is any limitation on access to the insured premises, it results from the contamination at the insured premises, not at another location.

The Equipment Breakdown Coverage provides that the insured "will pay for **direct physical damage** to Covered Property that is the direct result of an '**accident**.'" *Id.* As used in this Additional Coverage, '**accident**' means a fortuitous event that causes direct physical damage to '**covered equipment**.'" *Id.* For the reasons stated above, plaintiffs have not and cannot allege direct physical damage.

C.

Finally, defendants argue that even if the plaintiffs alleged a "direct physical loss of or damage to Covered Property," the

8

Exclusion of Loss due to Virus or Bacteria Endorsement ("Virus Exclusion") bars recovery for the losses claimed. As stated above, the burden is on the insurer to affirmatively prove that an exclusion in an insurance policy applies. *United Nat'l Ins. Co.*, 409 Ill. App. 3d 711, 717 (2011) (citation omitted).

Section B to the Exclusion of Loss due to Virus or Bacteria Endorsement ("Virus Exclusion") states that if the insured claims a loss due to "***any virus*...** that induces or is capable of inducing physical distress, illness or disease," New York Marine will ***not*** pay for any loss or damage caused by such virus. *Id*. (emphasis added).

Section A provides:

> The exclusion set forth in Paragraph B. ***applies to all coverage under all forms and endorsements*** that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover ***business income, extra expense or action of civil authority***.

*Id*. (emphasis added). Given the plain language of Sections A and B, plaintiffs are precluded from recovering for *any* losses or damages, tangible or intangible, alleged to be caused by the presence or harmful effects of a virus. This is true regardless of the particular policy provision under which the insured proceeds to obtain coverage. Section E to the exclusion makes this explicit by stating that the terms of Section B, "or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy." *Id*.

First, despite this plain language, plaintiffs argue that the policies are ambiguous with respect to whether the Virus Exclusion applies to plaintiffs' damages. The court finds no such ambiguity. At the risk of repetition, the Virus Exclusion applies to "all coverage under all forms and endorsements." There is nothing remotely ambiguous about this language.

Second, plaintiffs argue that the Virus Exclusion is not relevant where plaintiffs have alleged, in the alternative, that their buildings were rendered unusable due to the Executive Orders which suspended their operations. First, this argument ignores the obvious fact that the Executive Orders were issued in response to the virus. Second, plaintiffs fail to identify any

9

provision of the policy which affords coverage for any losses arising out of actions taken by the government absent physical damage to property.

IV.

Under section 2-615, New York Marine moves to dismiss Count I (Declaratory Judgment). The essential requirements of a declaratory judgment action are: (1) a plaintiff with a legal tangible interest; (2) a defendant having an opposing interest; and (3) an *actual controversy* between the parties concerning such interests. *Beahringer v. Page,* 204 Ill. 2d 363, 372 (2003) (emphasis added). In light of the court's ruling with respect to Count II (Breach of Contract), plaintiffs do not state a claim for a declaratory judgment action, as there is not an actual controversy between the parties. The motion is granted.

V.

Under section 2-615, New York Marine moves to dismiss Count III (Vexatious Conduct, pursuant to 215 ILCS 5/155) on grounds that where a *bona fide* dispute concerning the scope and application coverage exists, or where the underlying claim is dismissed, sanctions pursuant to section 155 are inappropriate. The court agrees.

Under 215 ILCS 5/155, a party may recover attorneys' fees, costs and sanctions where an insurer has unreasonably delayed settling a claim and where that delay is "vexatious and unreasonable." Where a *bona fide* dispute concerning coverage exists, costs and sanctions pursuant to section 155 are inappropriate. *Cook v. AAA Life Ins. Co.*, 2014 IL App (1st) 123700, ¶ 49, citing *State Farm Mutual Automobile Insurance Co. v. Smith*, 197 Ill. 2d 369, 380 (2001). Further, where no coverage is owed under a policy, there can be no finding that the insurer acted vexatiously or unreasonably with respect to the claim. *Joseph T. Ryerson & Son, Inc. v. Travelers Indem. Co. of Am.*, 2020 IL App (1st) 182491, ¶ 48 (citations omitted).

Where, as here, the court finds that plaintiffs are not entitled to property coverage under the policies on the grounds alleged, section 155 sanctions are inappropriate. In light of this court's above ruling related to Count II (Breach of Contract), then, the court likewise grants the motion to dismiss Count III.

* * * *

Based on the foregoing,

(1) The section 2-615 motion to dismiss is granted, and Counts I, II, and III against New York Marine are dismissed with prejudice;

(2) The case-management conference set for March 5, 2021 at 9:00 shall stand as to the pending motion of Corkill Insurance Agency, Inc. No appearance is necessary.

Failure to comply may result in dismissal for want of prosecution or entry of a default order.

ENTERED:

*Jerry A. Esrig*
Honorable Jerry A. Esrig
Circuit Judge, Law Division

Dated: February 19, 2021

Circuit Judge
Jerry A. Esrig

Feb 19, 2021
Circuit Court - 2101