# EXHIBIT 1

**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GARMANY OF RED BANK, INC., | |
| Plaintiff, | Civil Action No. 20-8676 (FLW) (DEA) |
| v. | OPINION |
| HARLEYSVILLE INSURANCE COMPANY and NATIONWIDE INSURANCE COMPANY, | |
| Defendants. | |

**WOLFSON, Chief Judge:**

Plaintiff Garmany of Red Bank, Inc. ("Plaintiff") initially filed this insurance coverage action in the Superior Court of New Jersey, Law Division, Monmouth County, seeking coverage for losses sustained as a result of the 2019 novel coronavirus ("COVID-19") pandemic. On July 11, 2020, Defendants Harleysville Insurance Company ("Harleysville") and Nationwide Insurance Company (collectively, "Defendants"), removed the action to this Court pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446, based on the diversity of the parties. Before the Court is Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may granted. For the reasons set forth herein, Defendants' Motion to Dismiss is **GRANTED**.

## I. BACKGROUND

Plaintiff is an upscale men and women's clothing store in Red Bank, New Jersey. (Compl. ¶ 3.) Harleysville issued to Plaintiff General Liability Policy Number MPA00000050730B, for the period April 28, 2019 through April 28, 2020. (*Id.* ¶ 9.) The Policy covers the premises known

as 117-121 Broad Street, Red Bank, New Jersey. (*Id.* ¶ 8.) The Policy provides that Harleysville "is obligated to pay [Plaintiff] for actual loss of net income and continuing operating expenses sustained during an interruption of business operations which interruption is caused by direct physical loss of or damage at the Insured Premises as a result of a covered peril." (*Id.* ¶ 12.) The Policy additionally provides coverage for loss of earning "while access to the Insured Premises is denied by an order of civil authority as a result of direct physical loss of or damage to property other than to the Insured Premises that is caused by a covered peril." (*Id.* ¶ 14.)

On March 9, 2020, New Jersey Governor Philip D. Murphy issued Executive Order 103, which declared a state of emergency and public health emergency in response to the COVID-19 pandemic. (*Id.* ¶ 17.) Thereafter, on March 21, 2020, Governor Murphy issued Executive Order 107, which, *inter alia*, required all non-essential retail businesses to close to the public. (*Id.* ¶ 18.) Plaintiff alleges that "[a]s a result of the Executive Orders, access of the public to the Insured Premises for purposes of shopping has been shut down." (*Id.* ¶ 20.)

Relevant here, the Policy provides coverage for loss of earnings and for extra expense. (Mulqueen Decl., Ex. A, at HP102–07.) This coverage is provided during the "restoration period" when Plaintiff's "business" is necessarily wholly or partially interrupted by direct physical loss of or damage to property at a "covered location." (*Id.* at HP102–03.) For coverage to apply, the loss of or damage to property must be the "result of a covered peril," which means "risks of direct physical loss unless the loss is limited or caused by a peril that is excluded." (*Id.* at HP087, HP102.) The Policy also contains the following "Income Coverage Extension":

> **Interruption by Civil Authority** – "We" extend "your" coverage for earnings and extra expense to include loss sustained while access to "covered locations" or a "dependent location" is specifically denied by an order of civil authority. This order must be a result of direct physical loss of or damage to property, other than at a "covered location" and must be caused by a covered peril. Unless

> otherwise indicated on the "schedule of coverages," this Income Coverage Extension is limited to 30 consecutive days from the date of the order.

(*Id.* at HP103.)

The Policy is modified by an endorsement form, entitled "Virus Or Bacteria Exclusion," which applies to all coverages provided by the Policy (the "Virus Exclusion"). The Virus Exclusion provides, in pertinent part that Harleysville "do[es] not pay for loss, cost, or expense caused by, resulting from, or relating to any virus . . . that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress." (Mulqueen Decl., Ex. B.) The Virus Exclusion "applies to, but is not limited to, any loss, cost, or expense as a result of a. any contamination by a virus, bacterium, or other microorganism; or b. any denial of access to property because of any virus, bacterium, or other microorganism." (*Id.*)

On April 21, 2020, Plaintiff provided Harleysville with a notice of a claim for Earnings and Extra Expense coverage under the Policy. (Compl. ¶ 22.) On April 29, 2020, Harleysville denied Plaintiff's claim for three stated reasons: (1) there was no direct physical loss or damage to covered property at an insured premise; (2) the suspension of operations was not caused by direct physical loss or damage to property other than an insured premise; and (3) COVID-19 is not a covered cause of loss based on the Virus Exclusion. (*Id.* ¶ 24.)

On May 27, 2020, Plaintiff filed a complaint against Defendants in the Superior Court of New Jersey, Law Division, Monmouth County, seeking a declaration that "the Executive Orders trigger coverage under the Policy because [they] prohibit[] access to the Insured Premises"; "that the shutdown resulting from the Executive Orders constitute[s] an interruption of business operations under the Policy"; that "the Virus Exclusion is void and enforceable as violative of New Jersey public policy"; and that "coverage is provided to [Plaintiff] for any current and future losses

or damage including Earnings and Extra Expense caused by the Executive Orders and any future civil authority orders resulting in a shutdown." (*See id.*) Defendant removed the action to this Court pursuant to 28 U.S.C. § 1446 based on the diversity of the parties. This motion followed.

## II. STANDARD OF REVIEW

### a. Rule 12(b)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*,

515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotations and brackets omitted).

### b. Interpretation of Insurance Contracts Under New Jersey Law

Under New Jersey law, the determination of "the proper coverage of an insurance contract is a question of law."[1] *Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) (citing *Atl. Mut. Ins. Co. v. Palisades Safety & Ins. Ass'n*, 364 N.J. Super. 599, 604 (App. Div. 2003)). "An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." *Flomerfelt v. Cardiello*, 202 N.J. 432, 441 (2010). However, because insurance policies are contracts of adhesion, they "are subject to special rules of interpretation," *Longobardi v. Chubb Ins. Co. of N.J.*, 121 N.J. 530, 537 (1990), and "courts must assume a particularly vigilant role in ensuring their conformity to public policy and

---

[1]  The parties do not dispute that New Jersey law applies to this matter.

principles of fairness." *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 175 (1992); *see Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 594 (2001) ("We give special scrutiny to insurance contracts because of the stark imbalance between insurance companies and insureds in their respective understanding of the terms and conditions of insurance policies."). In a dispute over the interpretation of an insurance contract, the "burden is on the insured to bring the claim within the basic terms of the policy." *Reliance Ins. Co. v. Armstrong World Indus., Inc.*, 292 N.J. Super. 365, 377 (App. Div. 1996). However, where, as here, "the insurance carrier claims the matter in dispute falls within exclusionary provisions of the policy, it bears the burden of establishing that claim." *Rosario ex rel. Rosario v. Haywood*, 351 N.J. Super 521, 530 (App. Div. 2002).

In New Jersey, the court's function in construing policies of insurance, as with any other contract, "is to search broadly for the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes of the policies." *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 271 N.J. Super. 409, 416 (App. Div. 1994). In most cases, the best indication of the parties' reasonable expectations lies in the language of the insurance policy itself, *Moessner*, 121 F.3d at 903, and thus, ordinarily, "the words of an insurance policy are to be given their plain, ordinary meaning." *Zacarias*, 168 N.J. at 595. In that regard, "[w]here the express language of the policy is clear and unambiguous, 'the court is bound to enforce the policy as it is written.'" *Rosario*, 351 N.J. Super. at 530 (quoting *Royal Ins.*, 271 N.J. Super. at 416); *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 238 (2008) ("If the language is clear, that is the end of the inquiry."). This governing principle precludes courts from writing "'for the insured a better policy of insurance than the one purchased.'" *Gibson v. Callaghan*, 158 N.J. 662, 670 (1999) (citation omitted).

Additionally, in the context of an insurance policy, "[e]xclusionary clauses are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" *Flomerfelt*, 202 N.J. at 441 (quoting *Princeton Ins. Co. v. Chunmuang*, 151 N.J. 80, 95 (1997)). Because the burden is on the insurer to bring the case within an exclusion, *Chunmuang*, 151 N.J. at 95, "exclusions are ordinarily strictly construed against the insurer, and if there is more than one possible interpretation of the language, courts apply the meaning that supports coverage rather than the one that limits it." *Flomerfelt*, 202 N.J. at 442 (internal citation omitted). Nonetheless, "[i]f the words used in an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability.'" *Id.* (quoting *Longobardi*, 121 N.J. at 537). In that regard, courts cannot "disregard the 'clear import and intent' of a policy exclusion," *Am. Motorists Ins. Co. v. L–C–A Sales Co.*, 155 N.J. 29, 41 (1998) (citation omitted), and "[f]ar–fetched interpretations of a policy exclusion are insufficient to create an ambiguity requiring coverage." *Essex Ins. Co. v. New Jersey Pan–African Chamber of Commerce & Indus., Inc.*, No. A–1237–14T3, 2017 WL 4051726, at *3 (N.J. Super. Ct. App. Div. Sept. 14, 2017). "Rather, courts must evaluate whether, utilizing a 'fair interpretation' of the language, it is ambiguous." *Flomerfelt*, 202 N.J. at 442 (quoting *Stafford v. T.H.E. Ins. Co.*, 309 N.J. Super. 97, 105 (App. Div. 1998)).

## III. DISCUSSION

The Policy's Virus Exclusion applies to all coverage under the Policy. As such, if I determine that the Virus Exclusion is enforceable, and applicable to Plaintiff's claim, it will dispose of the case.[2] The Court, therefore, begins with a discussion of the exclusion. Plaintiff

---

2  *See Del. Valley Plumbing Supply, Inc. v. Merchants Mut. Ins. Co.*, No. 20-8257, 2021 WL 567994, at *3 (D.N.J. Feb. 16, 2021) (finding it unnecessary to address argument regarding interpretation of the term "direct physical loss" because "the Virus exclusion clearly applies and

raises three grounds on which it challenges the Virus Exclusion, arguing that (1) it does not apply because the Executive Orders were the proximate cause of Plaintiff's losses, (2) the exclusion is unenforceable as contrary to public policy, and (3) Harleysville is barred from enforcing the exclusion pursuant to the doctrine of regulatory estoppel. The Court considers each argument in turn.

### a. Proximate Cause of Loss

Plaintiff claims that the Virus Exclusion does not bar coverage here because (1) the Executive Orders, not COVID-19, were the proximate cause of its losses and (2) "the Virus Exclusion is not a pandemic exclusion." (Opp. Br., at 26.) Defendant, however, maintains that the Virus Exclusion clearly bars coverage for Plaintiff's losses which "were caused by, resulted from, and relate to the Coronavirus." (Moving Br., at 21.)

The Court first considers whether the Executive Orders, as opposed to the COVID-19 virus, were the proximate cause of Plaintiff's losses. The Policy's Virus Exclusion is set forth in an endorsement that adds the following language to the "Perils Excluded" by the Policy:

> "We" do not pay for loss, cost, or expense caused by, resulting from, or relating to any virus . . . that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.
>
> This exclusion applies to, but is not limited to, any loss, cost, or expense as a result of:
>
> a. any contamination by any virus, bacterium or other microorganism; or

---

bars coverage"); *Eye Care Ctr. of N.J., PA v. Twin City Fire Ins. Co.*, No. 20-5743, 2021 WL 457890, at *2 (D.N.J. Feb. 8, 2021) ("The virus exclusion applies in blanket fashion to all forms of coverage in the policy. If applicable, then, it will dispose of the case."); *N&S Restaurant LLC v. Cumberland Mut. Fire Ins. Co.*, ___ F. Supp. 3d ___, 2020 WL 6501722, at *3 (D.N.J. Nov. 5, 2020) ("[T]he Court finds it unnecessary to decide whether Plaintiff's claim resulted from direct physical loss or damage because the Court finds that the Virus Exclusion plainly applies here, barring coverage.").

> b. any denial of access to property because of any virus, bacterium, or other microorganism.

(Mulqueen Decl., Ex. B.) The "Perils Excluded" section of the Policy further provides that Harleysville "do[es] not pay for any excluded loss, damage or expense, even though any other cause or even contributes concurrently or in any sequence to the loss, damage or expense" and, furthermore "do[es] not pay for loss, damage or expense caused directly or indirectly by one or more of the following excluded causes or events, whether or not caused by or resulting from a peril covered." (Mulqueen Decl., Ex. A, at HP139.)

Where, as here, "there is a conflict as to whether, for coverage purposes, losses should be considered to be 'caused by' an excluded peril, the New Jersey courts employ the efficient proximate cause test, which is sometimes referred to as the Appleman's Rule." *N.J. Transit Corp. v. Certain Underwriters at Lloyd's London*, 461 N.J. Super. 440, 460 (App. Div. 2019). Pursuant to this rule, "if an exclusion 'bars coverage for losses *caused by* a particular peril, the exclusion applies *only if* the excluded peril was the efficient proximate cause of the loss.'" *Id.* (quoting *Zurich Am. Ins. v. Keating Bldg. Corp.*, 513 F. Supp. 2d 55, 70 (D.N.J. 2007)). Thus, "[w]here a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and the final loss, produces the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss." *Id.* at 460–61 (quoting *Auto Lenders Acceptance Co. v. Gentillini Ford, Inc.*, 181 N.J. 245, 257–58 (2004)). Conversely, a loss may also be covered where the covered cause "ends the sequence of events leading to the loss." *Flomerfelt*, 202 N.J. at 447. Ultimately, however, the pertinent question is not where in the sequence the alleged cause of loss occurred, but what was the predominant cause that produced

the loss. *See Franklin Packaging Co. v. Cal. Union Ins. Co.*, 171 N.J. Super. 188, 191 (App. Div. 1979).

While Plaintiff contends that the Executive Orders were the proximate cause of its losses because the Orders required the closure of its retail business, Plaintiff fails to acknowledge that the Policy provides that loss caused "directly or indirectly" by a virus is excluded. This language is known as an "anti-concurrent clause," which is "designed to avoid the 'efficient proximate cause doctrine.'" *N&S Restaurant LLC*, 2020 WL 6501722, at *4. Such clauses are enforceable under New Jersey law. *See, e.g., Mac Prop. Grp. LLC v. Selective Fire & Cas. Ins. Co.*, No. L-2629-20, 2020 WL 7422374, at *7 (N.J. Super. Ct. Law Div. Nov. 5, 2020) (enforcing virus exclusion that contained an anti-concurrent clause where plaintiff argued that its losses were caused by executive orders as opposed to COVID-19 virus); *see also Assurance Co. of Am., Inc. v. Jay-May, Inc.*, 38 F. Supp. 2d 349, 354 (D.N.J. 1999) (finding anti-concurrent clause enforceable under New Jersey law); *Simonetti v. Selective Ins. Co.*, 372 N.J. Super. 421, 431 (App. Div. 2004) (noting that the inclusion of an anti-concurrent clause "evidence[ed] a clear intention to bar coverage"). Here, the plain language of the Virus Exclusion indicates that the Policy was drafted to eliminate the efficient proximate cause doctrine. In other words, the Policy "does not provide coverage for losses caused directly or indirectly by a virus, regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *N&S Restaurant LLC*, 2020 WL 6501722, at *4.

Moreover, even if the Policy did not contain an anti-concurrent clause, Plaintiff cannot show that the Executive Orders, and not the COVID-19 virus, were the proximate cause of its losses. The Court recently addressed a similar issue in *Causeway Automotive, LLC v. Zurich Am. Ins. Co.*, No. 20-8393, 2021 WL 486917 (D.N.J. Feb. 10, 2021). *Causeway* involved a virus exclusion that did not contain an anti-concurrent clause. *Id.* at *5 n.6. There, plaintiffs argued that

Governor Murphy's Executive Orders were the cause of the losses that resulted from the closure of their businesses. *Id.* at *5–6. As I explained in *Causeway*:

> The Executive Orders were issued for the sole reason of reducing the spread of the virus that causes COVID-19 and would not have been issued but for the presence of the virus in the State of New Jersey. *See 7th Inning Stretch LLC v. Arch Ins. Co.*, No. 20-8161, 2021 U.S. Dist. LEXIS 11326, at *5 (D.N.J. Jan. 19, 2021) ("Because the Stay-at-Home Orders were issued to mitigate the spread of the highly contagious novel coronavirus, Plaintiffs' losses are tied inextricably to that virus and are not covered by the policies.").

*Id.* at *6. The same holds true here. Plaintiff's Complaint acknowledges that the Executive Orders were issued "[i]n response to the COVID-19 pandemic." (Compl. ¶¶ 16–18.) As such, it is clear that the "but for" cause of Plaintiffs' losses was COVID-19—the Executive Orders and the virus are so inextricably connected that it is undeniable that the Orders were issued because of the virus." *See id.*

Indeed, as I also observed in *Causeway*, the majority of courts to consider the issue of causation in this context, including New Jersey courts, have determined that "[t]he Governor issued his executive orders affecting Plaintiff's business as a direct result of COVID-19 . . . and any losses incurred therefrom are squarely within the exclusion." *Mattdogg, Inc. v. Phil. Indem. Ins. Co.*, No. L-820-20, 2020 WL 7702634, at *4 (N.J. Super. Ct. Law. Div. Nov. 17, 2020); *Mac Prop. Grp. LLC v. Selective Fire Cas. Ins. Co.*, No. L-2629-20, 2020 WL 7422374, at *8 (N.J. Super. Ct. Law Div. Nov. 5, 2020) ("Since the virus is alleged to be the cause of the governmental action, and the governmental action is asserted to be the cause of the loss, plaintiff cannot avoid the clear and unmistakable conclusion that the coronavirus was the cause of the alleged damage or loss."); *see also Del. Valley Plumbing Supply, Inc.*, 2021 WL 567994, at *3 ("Therefore, '[b]ecause the Stay-at-Home Orders were issued to mitigate the spread of the highly contagious novel

coronavirus, Plaintiff's losses are tied inextricably to that virus.'"); *Eye Care Ctr. of N.J.*, 2021 WL 457890, at *2 ("But for the "spread" of COVID-19, governments would not have issued closure orders, and Eye Care would not have stopped performing non-emergency procedures."); *N&S Restaurant LLC*, 2020 WL 6501722, at *4–5.[3]

Plaintiff additionally argues, in cursory fashion, that the Virus Exclusion does not bar coverage because it is not a "pandemic exclusion." While Plaintiff provides no legal support for this argument; Defendant cites to two cases in which courts rejected similar arguments. For example, in *Boxed Foods Co., LLC v. California Capital Insurance Co.*, the plaintiff also contended the virus exclusion set forth in its insurance policy did not bar coverage because its losses were caused by the COVID-19 "pandemic" as opposed to the virus. No. 20-CV-04571-CRB, 2020 WL 6271021, at *5 (N.D. Cal. Oct. 26, 2020), as amended (Oct. 27, 2020). In rejecting this position, the Central District of California explained:

> [T]he word "pandemic" describes a disease's geographic prevalence, but it does not replace disease as the harm-causing agent. *See* Oxford English Dictionary (3rd ed., 2005). Plaintiffs provide no support for their argument that insurers must specify the magnitude of an excluded cause of loss in order to avoid ambiguity. The Virus Exclusion's alleged failure to specify how widespread a disease must become to trigger the exclusion does not demonstrate that the exclusion is ambiguous.

*Id.*; *see also W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*, No. 20-5663, 2020 WL 6440037, at *6 (C.D. Cal. Oct. 27, 2020) ("Plaintiffs' interpretation defies the plain and

---

[3] On March 17, 2021, Plaintiff submitted to the Court a letter advising the Court of two state court orders denying defendants' motions to dismiss in *Westfield Area YMCA v. North River Ins. Co.*, No. UNNL-2584 (N.J. Super. Ct. Law. Div. Jan. 8, 2021), which Plaintiff submits is "relevant to the Court's determination of the pending motion." (ECF No. 20.) It appears, based on Plaintiff's submission, that *Westfield Area YMCA* is also an insurance coverage action related to losses caused by the COVID-19 pandemic. (*Id.*) However, the orders contain no explanation of the state court's reasons for denying defendants' motions to dismiss. Without the state court's reasoning, the Court cannot assess the relevance of these decisions, if any, on this matter.

unambiguous text of the Policy and is 'akin to arguing that a coverage exclusion for damage caused by fire does not apply to damage caused by a very large fire.'"). I agree. The term "pandemic" simply defines the prevalence of a virus or disease. The fact that the COVID-19 virus has become a pandemic does not negate the simple fact that the Executive Orders were issued to curb the spread of the COVID-19 virus.

Accordingly, I find that the Virus Exclusion unambiguously bars coverage of Plaintiff's claims.

### b. Public Policy

Plaintiff next contends that the Virus Exclusion is void because it violates both United States and New Jersey public policy. In support of this position, Plaintiff points to H.R. 6494, a bill introduced in the House of Representatives on April 14, 2020, and New Jersey Assembly Bill No. 3844, introduced in the New Jersey Assembly on March 16, 2020. (Compl. ¶ 30.) Both bills sought to require commercial insurers to cover losses caused by the COVID-19 pandemic. (*See* Compl. ¶¶ 31–32.) Plaintiff contends that these proposed bills demonstrate that "the Virus Exclusion is in the process of being eliminated with respect to the losses suffered by Garmany in recognition of the harmful effect of the exclusion on the public."[4] (Opp. Br., at 29.)

The New Jersey Appellate division has explained that "our courts will decline to enforce an insurance policy, like any other contract, if its enforcement would be contrary to public policy." *Hebela v. Healthcare Ins. Co.*, 370 N.J. Super. 260, 270 (App. Div. 2004). This exception,

---

[4] In its opposition brief, Plaintiff points to two additional bills introduced in the New Jersey Legislature: (1) Assembly Bill No. 4551, which would authorize insurers issuing business interruption coverage to offer a rider "which includes, as a covered peril under the policy, coverage for global virus transmission or pandemic, or both"; and (2) Assembly Bill No. 4805, which would require insurers to disclose whether a business interruption insurance policy provides pandemic coverage. (Opp. Br., at 29–30.)

however, is narrowly applied. *See Tucci v. Hartford Fin. Servs. Grp.*, 507 F. App'x 211, 212 (3d Cir. 2012) ("Only in exceptional cases involving terms that violate public policy, such as terms that would virtually nullify insurance coverage if taken literally, are unambiguous insurance contracts interpreted so as to conform with the reasonable expectations of the insured."); *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006) (holding "that the New Jersey Supreme Court would hold that a clear and unambiguous policy exclusion should be applied according to the plain language of the exclusion unless it violates public policy as well as the objectively reasonable expectations of the insured").

Plaintiff has not demonstrated that the Virus Exclusion is contrary to public policy. The bills relied on by Plaintiff were never voted on by either the House of Representatives or the New Jersey Assembly. Plaintiff nevertheless contends that the "bills recognize the disastrous public policy consequences that enforcement of the Virus Exclusion will have." (Opp. Br., at 29.) I disagree. As I observed in *Causeway*, while the proposal of these bills "may demonstrate the beliefs of some legislators" as to what "public policy on virus exclusions in insurance policies *should be*, the mere existence of a proposed bill does not demonstrate that the public policy, currently, precludes application of virus exclusions in the context of the COVID-19 pandemic." *Causeway Automotive*, 2021 WL 486917, at *8. In that regard, "[t]he public policy which [the Court] must follow is that which instructs our courts to enforce an insurance policy 'as written' and not seek 'to make a better contract for either of the parties' than that which they chose to make for themselves." *Hebela*, 370 N.J. Super. at 272 (quoting *Kampf v. Franklin Life Ins. Co.*, 33 N.J. 36, 43 (1960)). Accordingly, I decline to find the Virus Exclusion is a void as violative of public policy.

### c. Regulatory Estoppel

Finally, Plaintiff claims that the Virus Exclusion is void under the principles of regulatory estoppel. Specifically, Plaintiff alleges, upon information and belief, that "Harleysville proffered the Virus Exclusion to the New Jersey Department of Banking and Insurance ("the Department") as a clarification to policy intent" and that "Harleysville represented that the endorsement clarifies that losses caused by, resulting from, or relating to any virus is excluded." (Compl. ¶ 26.) However, Plaintiff claims that "Harleysville added the Virus Exclusion to eliminate virus-caused property-damage coverage without advising the Department that there was such a sweeping change in coverage or that rates should be reduced as a result of the proffered exclusion." (*Id.* ¶ 27.) Plaintiff contends that these alleged "omissions and representations . . . were knowingly false, or recklessly or negligently made and had the effect of misleading the Department to the detriment of all insureds of Harleysville." (*Id.* ¶ 28.)

In support of its regulatory estoppel argument, Plaintiff relies on the New Jersey Supreme Court's decision in *Morton International, Inc. v. General Accident Ins. Co.*, 134 N.J. 1 (1993). There, the New Jersey Supreme Court held that insurers were estopped from relying on an interpretation of a pollution exclusion clause that was inconsistent with representations made to regulatory authorities concerning the impact and scope of that clause. Specifically, the *Morton* Court found that the insurance industry failed to "candidly reveal[] the extent of the contraction in coverage intended by the pollution-exclusion clause," preventing regulatory officials from making "informed judgments concerning the rate and coverage implicated by the clause" and "insureds would have been aware that insurance coverage for environmental pollution would be sharply restricted." *Id.* at 79. Accordingly, the court declined to enforce the pollution-exclusion clause as written because, to do so "would contravene th[e] State's public policy requiring regulatory

approval of standard industry-wise policy form to assure fairness in rates and in policy content, and would condone the industry's misrepresentation to regulators in New Jersey and other states concerning the effect of the clause." *Id.* at 30.[5]

Here, however, Plaintiff fails to allege the kind of misrepresentations that were at issue in *Morton*. Plaintiff alleges that Harleysville advised the Department that the Virus Exclusion would bar coverage for losses caused by, related to, or arising from any virus. Plaintiff has not, however, alleged how that statement is contradicted by Harleysville's interpretation of the Virus Exclusion in denying Plaintiff's claim for coverage. In that regard, the Court is unable to discern any misrepresentation made by Harleysville to the Department.

In an apparent attempt to save its claim, Plaintiff includes in its Opposition Brief additional factual allegations to support its regulatory estoppel argument. Specifically, Plaintiff now contends that

> In 2006, two insurance industry trade groups, Insurance Services Office, In. ("ISO") and the American Association of Insurance Services ("AAID"), represented hundreds of insurers (including Harleysville) in a national effort to seek approval from the state insurance regulators for the adoption of the Virus Exclusion. In their filings with the various state regulators (including New Jersey), on behalf of the insurers, ISO and AAIS represented that the adoption of the Virus Exclusion was only meant to "clarify" that coverage for "disease-causing agents" has never been in effect, and was never intended to be included, in the policies. Specifically, AAIS represented to the Department that policies "have not been, nor were they intended to be, a source of recovery for loss, cost, or expense caused by disease-causing agents" and that the Virus Exclusion was merely a clarification and nothing new. But these representations were false.

---

[5] The Court is only aware of one New Jersey state court case addressing regulatory estoppel in the context of virus exclusions and COVID-19. In *Mattdogg*, the court found that Plaintiff's regulatory estoppel argument failed because, *inter alia*, "regulatory estoppel does not void clear and unambiguous provisions or provide a basis for recission." 2020 WL 7702634, at *4.

16

(Opp. Br., at 27.) I need not consider these new allegations as it is well-established that a plaintiff may not use its opposition to a dispositive motion as an opportunity to amend the complaint. *See Scott v. Cohen*, 528 F. App'x 150, 152 (3d Cir. 2013) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989)); *Warfield v. SEPTA*, 460 F. App'x 127, 132 (3d Cir. 2012) ("A plaintiff may not amend a complaint by raising arguments for the first time in a brief in opposition to a motion for summary judgment."). Even if the Court were to accept these allegations, however, they would not save Plaintiff's claim. Much like the allegations contained in the Complaint, these new allegations fail to indicate any actual false statement or misrepresentation made by the insurance industry regarding the scope of virus exclusions.[6] Rather, Plaintiff makes only conclusory allegations that statements to state regulatory authorities regarding the Virus Exclusion were "false." This is insufficient to state a claim upon which relief may be granted. *See Phillips*, 515 F.3d at 234.[7]

---

[6] I further note that this is not the first case in which a plaintiff has raised the issue of regulatory estoppel based the AAIS and ISO filings regarding the virus exclusion. *See Del. Valley Plumbing Supply, Inc.*, 2021 WL 567994, at *6. Indeed, federal courts that have considered the issue have uniformly rejected claims that virus exclusions in commercial insurance policies are void under principles of regulatory estoppel. *See, e.g., id.* at *6; *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, ___ F. Supp. 3d ___, 2020 WL 6545893, at *4–5 (E.D. Pa. Nov. 6, 2020); *Boxed Foods Co.*, 2020 WL 6271021, at *6 ("Even if ISO mispresented the purpose and scope of its Virus Exclusion, Plaintiffs' theory requires the Court to construe Defendant's plain, unambiguous Virus Exclusion to mean the exact opposite of its ordinary meaning. Neither California law nor federal courts interpreting Virus Exclusions, permit such an outcome."); *Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*, 484 F. Supp. 3d 492, 504 & n.13 (E.D. Mich. 2020).

[7] Because the Court finds that the Virus Exclusion is enforceable and clearly bars Plaintiff's claim for coverage, the Court need not consider the parties' arguments with respect to whether the interruption of Plaintiff's business resulted from a "physical loss of or damage to" the covered property.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**. An appropriate Order accompanies this Opinion.

DATED: March 18, 2021                    /s/ Freda L. Wolfson
                                         Freda L. Wolfson
                                         U.S. Chief District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GARMANY OF RED BANK, INC., | Civil Action No. 20-8676 (FLW) (DEA) |
| Plaintiff, | |
| v. | ORDER |
| HARLEYSVILLE INSURANCE COMPANY and NATIONWIDE INSURANCE COMPANY, | |
| Defendants. | |

**THIS MATTER** comes before the Court on a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Patrick J. Mulqueen, Esq., counsel for Defendants Harleysville Insurance Company and Nationwide Mutual Insurance Company ("Defendants"); it appearing that Plaintiff Garmany of Red Bank, Inc., through its counsel James A. Maggs, Esq., opposes the Motion; the Court having reviewed the submissions of the parties pursuant to Federal Rule of Civil Procedure 78, for the reasons set forth in the Opinion also filed on this date, and for good cause shown,

**IT IS** on this 18th day of March, 2021,

**ORDERED** that Defendant's Motion to Dismiss is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint is **DIMISSED WITH PREJUDICE**; and it is further

**ORDERED** that the Clerk of the Court shall mark this case as **CLOSED**.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge