UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AFM MATTRESS COMPANY, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>MOTORISTS COMMERCIAL MUTUAL INSURANCE COMPANY,<br><br>    Defendant. | No. 20 CV 3556<br><br>Judge Manish S. Shah |

**ORDER**

Defendant's motion to dismiss, [30], is granted. Plaintiff's amended complaint is dismissed with prejudice. Enter judgment and terminate civil case.

**STATEMENT**

*Background*

Plaintiff AFM owned 52 mattress stores in Illinois and Indiana. [28] ¶ 14.[1] AFM had an insurance policy with defendant Motorists. [28] ¶ 16. The policy obligated Motorists to cover AFM's business-interruption losses caused by a "Covered Cause of Loss." [28] ¶¶ 18–23. The policy defined covered cause of loss as "direct physical loss unless the loss is excluded or limited in this policy." [28] ¶ 26. The policy also contained a virus exclusion, which stated, "We will not pay for loss or damage caused by or resulting from any virus." [28-1] at 167.[2] That exclusion applied "to all coverage under all forms and endorsements," including business income, extra expense, and actions of a civil authority. [28-1] at 167.

Insurance companies in Illinois must submit policy forms, endorsements, and exclusions, or any proposed changes to them, to the Illinois Department of Insurance for approval. [28] ¶ 29. An insurance services company, Insurance Services Office, Inc. prepared standard insurance forms and endorsements for insurance companies

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Facts are taken from the amended complaint. [28].

[2] I consider the text of the policy because AFM attached a copy of it to the complaint. *See Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018).

and submitted those forms to state regulators for approval. [28] ¶ 30. After the SARS outbreak in 2003, insurers paid out millions of dollars in business-interruption claims. [28] ¶ 31. Around 2006, ISO created a new policy endorsement that excluded damages caused by a virus from covered causes of loss. [28] ¶¶ 32–33. ISO submitted that endorsement to the Department of Insurance on behalf of Motorists and other insurers, along with a circular explaining that the virus endorsement was a clarification of existing coverage rather than a reduction in coverage. [28] ¶¶ 34–38. The circular said that property policies had not been a source of recovery for losses from viruses, but the possibility of a pandemic raised the concern that insurers would have to cover such losses, "contrary to policy intent." [28] ¶¶ 37–38. AFM alleges those representations were false, because the insurance industry had previously covered losses caused by SARS, E. coli, and other diseases. [28] ¶¶ 39–40.

In March 2020, Illinois and Indiana authorities issued stay-at-home orders in response to the COVID-19 pandemic. [28] ¶¶ 49–64. AFM sustained losses as a result, and submitted a claim for business-interruption coverage to Motorists. [28] ¶¶ 66–67. Motorists denied the claim. [28] ¶ 68. AFM seeks declaratory relief establishing that Motorists must cover its losses.

This is AFM's second attempt to state a claim. I granted Motorists's first motion to dismiss and dismissed AFM's claim without prejudice because the text of the virus exclusion was unambiguous and precluded coverage. [27]. The parties don't seek to relitigate that finding, and the amended complaint doesn't change the allegations regarding what's in the policy. AFM has added allegations about ISO's representations to state insurance regulators, and it alleges that a doctrine known as "regulatory estoppel" bars Motorists from denying coverage for losses caused by a virus. Motorists again moves to dismiss.

*Analysis*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, I construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018).

Under Illinois law, a court may look to extrinsic evidence—such as ISO's statements to regulators—to interpret an insurance policy only when the policy is ambiguous. *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 999 (7th Cir. 2018); *Thompson v. Gordon*, 241 Ill.2d 428, 441 (2011). Some jurisdictions allow extrinsic evidence to interpret even an unambiguous contract under the doctrine of regulatory estoppel, which holds that an industry may not take one position in front a regulatory

agency to win agency approval, then take an opposite position when policyholders file claims for coverage. *Hussey Copper, Ltd. v. Arrowood Indem. Co.*, 391 Fed. App'x 207, 211 (3d Cir. 2010). Pennsylvania and New Jersey recognize this concept as a matter of state law. *See Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 566 Pa. 494, 505 (2001); *Morton Int'l, Inc. v. Gen. Acc. Ins. Co. of Am.*, 134 N.J. 1, 75 (1993).

A court sitting in diversity must answer a question of state law the same way the state's highest court or intermediate appellate courts would. *Newman*, 885 F.3d at 999. No Illinois court has explicitly applied regulatory estoppel. AFM relies on *Am. States Ins. Co. v. Koloms*, 177 Ill.2d 473 (1997), to suggest that the Illinois Supreme Court implicitly endorsed the doctrine. But that case found the relevant exclusion to be ambiguous: "[W]e are troubled by … the manifestation of an ambiguity which results when the exclusion is applied" to certain cases. *Id.* at 488. The *Koloms* court then looked to the drafting history and approval process of the provision to ascertain the drafters' intent. *Id.* at 490–91 (discussing evolution of pollution exclusion). The court never addressed any estoppel theory, and it never stated that insurers were bound by what was said to regulators. The *Koloms* court cited to the New Jersey Supreme Court's decision in *Morton* only for background on the drafters' intent, not because it was endorsing that court's application of regulatory estoppel. *Id.* That the court looked to extrinsic evidence is unremarkable where it found the language at issue ambiguous. Because no Illinois court has ever recognized a theory of regulatory estoppel, and I predict that the Illinois Supreme Court would not apply it to an unambiguous insurance policy, it has no application here. *See also Sojo's Studios, Inc. v. Citizens Ins. Co. of Am.*, 2021 WL 837623, at *1 (N.D. Ill. Mar. 4, 2021).

Finally, even if regulatory estoppel applied in Illinois, and assuming that ISO was acting as Motorists's agent,[3] AFM hasn't plausibly identified any conflict between what ISO said in 2006 and Motorists' reliance on the virus exclusion now. As AFM alleges, the reason ISO submitted a virus exclusion was precisely to make explicit that the standard policy was meant to exclude virus-related claims. ISO stated: "[T]he specter of pandemic … raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage and to create sources of recovery for such losses, contrary to policy intent." [28] ¶ 37.

AFM emphasizes ISO's statement that the policy had historically "not been a source of recovery" for losses "involving contamination by disease-causing agents." [28] ¶ 37. As AFM sees it, that statement misled regulators into thinking the virus

---

[3] AFM's assertion that ISO was acting as Motorists's agent is conclusory, and generally, a "mere allegation of agency" is insufficient to plead an agency relationship. *Bogenberger v. Pi Kappa Alpha Corp., Inc.*, 2018 IL 120951, ¶ 28; *see Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 357 (7th Cir. 2020) (complaint lacked sufficient facts to establish an agency relationship). Motorists doesn't concede the point, but doesn't argue it either. [31] at 18. Since neither party briefed the sufficiency of the agency allegations, I do not reach it and assume for purposes of this motion that ISO's statements are imputed to Motorists.

3

exclusion wouldn't change existing coverage, under which insurers had paid out claims for SARS-related damage. I accept AFM's allegation that ISO's statement was false. But a misleading statement about past coverage wouldn't trigger the application of regulatory estoppel. The doctrine bars insurers from saying one thing to regulators to gain approval, then saying the opposite to policyholders, and AFM doesn't point to any assurances ISO made to regulators that insurers would cover virus-related damage claims. Any such assurance would have been in clear conflict with the unambiguous language of the virus exclusion. Whether the exclusion was a clarification of existing coverage or a new addition to the policy is beside the point—what matters is that ISO told regulators that the virus exclusion would bar coverage. That's what Motorists says now. The positions are consistent.[4]

Ordinarily, leave to amend should be freely given unless amendment would be futile. *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 919 (7th Cir. 2015). AFM has amended its complaint once and is still unable to state a claim. AFM doesn't ask for leave to file a second amended complaint, and it doesn't suggest what it would add to another complaint. Amendment would be futile, so AFM's claim is dismissed with prejudice.

ENTER:

Manish S. Shah
United States District Judge

Date: April 15, 2021

---

[4] Jurisdictions that recognize regulatory estoppel have rejected its application in this context. *See, e.g.*, *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, 2020 WL 6545893, at *5 (E.D. Pa. Nov. 6, 2020) (insurer took "the same position here as the ISO" did "by arguing that the virus exclusion eliminates coverage"); *see also Garmany of Red Bank, Inc. v. Harleysville Ins. Co.*, 2021 WL 1040490, at *9 n.6 (D.N.J. Mar. 18, 2021) ("[F]ederal courts … have uniformly rejected claims that virus exclusions in commercial insurance policies are void under principles of regulatory estoppel."). And courts in jurisdictions that don't recognize the doctrine likewise have rejected its hypothetical application to the same facts AFM alleges. *See, e.g.*, *Robert E. Levy, D.M.D., LLC v. Hartford Fin. Servs. Grp. Inc.*, 2021 WL 598818, at *7 (E.D. Mo. Feb. 16, 2021) ("Plaintiffs allege that the industry groups made statements in 2006 representing that the policies were not intended to cover virus-related losses. … Defendants take the same position here."); *Border Chicken AZ LLC v. Nationwide Mut. Ins. Co.*, 2020 WL 6827742, at *5 (D. Ariz. Nov. 20, 2020) ("[T]he ISO Circular is clear that the Virus Exclusion is meant to exclude losses caused by pandemics. Assuming regulators did rely on the ISO document, they would have been aware of its effect on future coverage.").